**Edward RECTOR, Plaintiff,**

v.

**LABONE, INC., et al., Defendants.**

**No. 4:02CV00092GTE.**

United States District Court,
E.D. Arkansas,
Western Division.

June 24, 2002.

---

Luther Oneal Sutter, Harrill & Sutter, P.L.L.C., Little Rock, AR, for Edward Rector.

Bettina E. Brownstein, Wright, Lindsey & Jennings, Little Rock, AR, for LabOne Inc.

Gail Ponder Gaines, Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR, for Occupational Health Centers of AR, P.A.

Allan W. Horne, Horne, Hollingsworth & Parker, Little Rock, AR, for Employee Information Services.

## ORDER

EISELE, District Judge.

Before the Court is Plaintiff's Motion to Remand. Separate Defendants Occupational Health Centers of Arkansas, P.A. d/b/a Concentra Medical Centers and LabOne, Inc. have each filed a response thereto. For the reasons provided herein, the Plaintiff's Motion to Remand will be denied.

## I. Factual and Procedural Background

The Plaintiff was employed as a truck driver, and was thus subject to the drug testing requirements of the Federal Omnibus Transportation Employee Testing Act of 1991 ("FOTETA"), Pub.L. No. 102–143, 105 Stat. 952 (1991). On September 25, 2001, the Plaintiff's employer [1] instructed him to appear at the Concentra Medical Centers for the purpose of taking a random drug test. The Plaintiff tested positive for marijuana usage, the employer was notified of this, and he was terminated.

On January 24, 2002, the Plaintiff filed suit against: (1) LabOne, Inc.; (2) Occupational Health Centers of Arkansas, P.A. d/b/a Concentra Medical Centers (hereinafter "Concentra"); (3) Dr. Murray Lappe [2]; and (4) Jane Doe. [3] The Plaintiff avers in his Complaint that "one or more of the defendants ... negligently failed to abide by federal regulations" in conducting his drug screen. [4] He brings state-based tort claims of negligence, defamation, outrage and tortious interference with a contractual relationship, and seeks money damages.

On February 20, 2002, LabOne and Concentra removed Plaintiff's suit to federal court on preemption grounds. On February 26, 2002, LabOne and Concentra filed Federal Rule of Civil Procedure 12(b)(6)

---

1. The Record does not identify the Plaintiff's employer.

2. Dr. Lappe's employer, Employee Information Services, was also named as a Defendant. However, after Plaintiff's suit was removed to this Court, the Court granted the Plaintiff's motion to dismiss Employee Information Services from the case.

3. From the Defendants' filings, the Court learns that the Plaintiff submitted a urine specimen to Concentra, and LabOne received and tested it. The specimen tested positive for cannabinoids, a marijuana metabolite. LabOne reported the test results to Dr. Lappe, the designated Medical Review Officer. It is alleged that Ms. Doe is a nurse employed by Concentra.

4. In his Brief in Support of Motion to Remand, the Plaintiff acknowledges that no private right of action for violation of the federal regulations exists, but contends that his Complaint can be read as pleading a claim at common law.

motions to dismiss. On March 4, 2002, the Plaintiff filed the instant motion to remand. The motions to dismiss have not been responded to, and are being held in abeyance pending the Court's decision on the remand question.

## II. Discussion

Presently before the Court is Plaintiff's Motion to Remand. The Defendants, in removing Plaintiff's suit pursuant to 28 U.S.C. §§ 1441 & 1446, generally asserted that Plaintiff's specific state-based tort claims have been preempted by FOTETA. The Court agrees.

### A. Federal Omnibus Transportation Employee Testing Act of 1991

FOTETA amended the Federal Commercial Motor Vehicle Safety Act of 1986 to provide:

In the interest of commercial motor vehicle safety, the Secretary of Transportation shall prescribe regulations that establish a program requiring motor vehicle carriers to conduct preemployment, reasonable suspicion, random, and post-accident testing of operators of commercial motor vehicles for the use of a controlled substance in violation of law or a United States Government regulation and to conduct reasonable suspicion, random, and post-accident testing of such operators for the use of alcohol in violation of law or a United States Government regulation. The regulations shall permit such motor carriers to conduct preemployment testing of such employees for the use of alcohol.

49 U.S.C. § 31306(b)(1)(A). Pursuant to this directive, the Secretary of Transportation promulgated the Controlled Substances and Alcohol Use and Testing regulations. *See* 49 C.F.R. § 382.101 et seq. The regulations in part require that truck drivers holding commercial driver's licenses be subject to random drug testing by their employers. *See* 49 C.F.R. § 382.305.

The regulations also require that the drug testing procedures comply with the scientific and technical procedures set forth in the DHHS Procedures for Transportation Workplace Drug and Alcohol Testing Programs regulations, 49 C.F.R. § 40.1 et seq. *See* 49 C.F.R. § 382.105.

FOTETA provides a preemption statement:

A state or local government may not prescribe or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this section. However, a regulation prescribed under this section may not be construed to preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property.

49 U.S.C. § 31306(g). The regulations implementing FOTETA also include preemption language:

(a) Except as provided in paragraph (b) of this section, this part preempts any State or local law, rule, regulation, or order to the extent that:

(1) Compliance with both the State or local requirement in this part is not possible; or

(2) Compliance with the State or local requirement is an *obstacle to the accomplishment and execution of any requirement* in this part.

(b) This part shall not be construed to preempt provisions of State criminal law that impose sanctions for reckless conduct leading to actual loss of life, injury, or damage to property, whether the provisions apply specifically to transportation employees, employers, or the general public.

49 C.F.R. § 382.109.

### B. Preemption

28 U.S.C. § 1441 provides that any state-court civil action that the federal dis-

trict courts have original jurisdiction over may be removed by a defendant to district court. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). District court have original jurisdiction over federal question cases, that is, cases arising under the Constitution, laws or treaties of the United States. *See id.* The well-pleaded complaint rule provides that a civil action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. *See id.*

The Supremacy Clause provides that the United States Constitution and the laws promulgated in pursuance thereof are the supreme law of the land. *See* U.S. Const. Art. VI, cl. 2. "The underlying rationale of the pre-emption doctrine, as stated more than a century and a half ago, is that the Supremacy Clause invalidates state laws that 'interfere with or are contrary to, the laws of congress.'" *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981) (quoting *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824)). Federal preemption is ordinarily a defense to a plaintiff's suit. *See Metropolitan Life Ins.,* 481 U.S. at 63, 107 S.Ct. 1542. However, a corollary to the well-pleased complaint rule is that Congress may so completely preempt an area that any claim raised in said area is necessarily federal in character. *See id.* at 63–64, 107 S.Ct. 1542. A state-court suit raising such preempted claims may be properly removed to federal court. *See id.* at 66–67, 107 S.Ct. 1542.

Federal regulations have the same preemptive effect as federal statutes. *See Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

"Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Boise Cascade Corp. v. Peterson,* 939 F.2d 632, 636 (8th Cir.1991) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). As for express preemption, "Congress can define explicitly the extent to which its enactments preempt state law." *English v. General Electric Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). In the absence of an express preemption statement, two types of implied preemption exist: field and conflict.

[I]n the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Although this Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory schemes, it has emphasized: "Where ... the field which Congress is said to have pre-empted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be " 'clear and manifest.' " *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. at 230, 67 S.Ct. at 1152.

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, see, *e.g., Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). See also *Maryland v. Louisiana*, 451 U.S. 725, 747, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). *English*, 496 U.S. at 79, 110 S.Ct. 2270. Under either an express or implied theory, the question of whether federal law preempts a state-law cause of action is a question of congressional intent. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

### C. Analysis

As noted, the Plaintiff asserts that "one or more of the defendants ... negligently failed to abide by federal regulations" in conducting his drug screen. The Plaintiff acknowledges that no private right of action for violation of the federal regulations exists, but contends that his Complaint can be read as pleading claims at common law. In his four-count Complaint, he brings the state-based tort claims of negligence, defamation, outrage and tortious interference with a contractual relationship. The Defendants removed the case to federal court, contending that FOTETA preempts Plaintiff's state law claims, and filed Rule 12(b)(6) motions to dismiss.

The issue before the Court is whether Plaintiff's state-based tort claims have been preempted by FOTETA. The United States Court of Appeals for the Eighth Circuit has not addressed this issue, and, as Concentra notes, "case law on this precise subject is sparse and conflicting." The parties have cited case law from other jurisdictions on various issues, but this Court has found the cases unpersuasive as not directly addressing the issues and all the federal regulations at issue. After considering FOTETA and the regulations implementing it, the Court concludes that Plaintiff's claims have been preempted, under either an express or an implied preemption theory, to such an extent that removal was proper.

The Court notes that both FOTETA and the regulations implementing it include express preemption statements. FOTETA provides:

> A state or local government may not prescribe or continue in effect a law, regulation, standard, or order *that is inconsistent with regulations prescribed under this section.* However, a regulation prescribed under this section may not be construed to preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property.

49 U.S.C. § 31306(g) (emphasis added). The regulations provide:

> (a) Except as provided in paragraph (b) of this section, this part preempts any State or local law, rule, regulation, or order to the extent that:
>
> > (1) Compliance with both the State or local requirement in this part is not possible; or
> >
> > (2) Compliance with the State or local requirement is an obstacle to the accomplishment and execution of any requirement in this part.
>
> (b) This part shall not be construed to preempt provisions of State criminal law that impose sanctions for reckless conduct leading to actual loss of life, injury, or damage to property, whether the provisions apply specifically to transporta-

tion employees, employers, or the general public.

49 C.F.R. § 382.109 (emphasis added).[5] With regard to the alcohol and drug testing regulations, the Department of Transportation has stated that "the purpose of preemption is to avoid the confusion and expense of inconsistent requirements for employers or testing entities that operate in several States and to prevent interference with the functioning of the Federal program by extraneous, burdensome requirements that may defeat its purpose and benefits by making effective implementation difficult or impossible." *Limitation on Alcohol Use by Transportation Workers,* 59 Fed.Reg. 7302, 7317 (Feb. 15, 1994).

Based on Plaintiffs claims for relief, the Court disagrees with his argument that the Defendants should be subject to state tort law, and the question of whether they adhered to the applicable standard of care, in conducting the Plaintiff's drug test, the manner and method of which is mandated by federal law. If the Defendants are found liable for their alleged conduct, liability will be imposed for conduct that is specifically addressed in the regulations. The Court concludes that Plaintiffs specific claims and allegations may impose standards inconsistent with or otherwise frustrate the FOTETA regulations, and will thus serve as "an obstacle to the accomplishment and execution" of the act. Therefore, Plaintiff's claims are specifically preempted by FOTETA by the standard enunciated by Congress in 49 U.S.C. § 31306(g). Furthermore, the regulations provide that Plaintiff had an administra-

tive remedy if he objected to the Defendants' alleged acts or omissions in conducting his drug test. These conclusions warrant a discussion of the FOTETA regulations.

When a transportation industry employee submits a urine specimen as part of a random drug test, the collection site attendant is responsible for following various procedural requirements to ensure that a valid specimen is collected, and is to complete a multi-part chain of custody form identifying the urine specimen of the employee, the name of the attendant, and the date and location of the collection. *See* 49 C.F.R. §§ 40.61–73. Federal regulations provide what the chain of custody form must provide. *See* 49 C.F.R. § 40.45(a). After the urine is collected, the attendant is to split it into two containers, a "primary specimen" and a "split specimen." The regulations term this a "split specimen collection" system, and it ensures that if the primary specimen evidences drug usage by the employee, he may request that a separate laboratory test the split specimen. *See* 49 C.F.R. § 40.71. The regulations provide: "In drug testing, a part of the urine specimen that is sent to a first laboratory and retained unopened, and which is transported to a second laboratory in the event that the employee requests that it be tested following a verified positive test of the primary specimen or a verified adulterated or substituted test result." 49 C.F.R. § 40.3. This is done to protect the employee and to ensure that his "reputation or career development is [not] unduly

---

**5.** Though in a different context, one district court noted: "The scope of [FOTETA's preemption] language is broad. It encompasses situations where a State law attempts to regulate in the same area as federal law, but in a contradictory manner. It also encompasses situations where the enforcement of a State law might thwart the intention of Congress.... I conclude that the Act's preemptive language is clear: any state law provisions, the enforcement of which would obstruct the deterrent effect of this legislation or the nationwide uniformity of testing rules, are pre-empted." *Keaveney v. Town of Brookline,* 937 F.Supp. 975, 982 (D.Mass. 1996).

threatened or harmed." Pub.L. No. 102–143, 105 Stat. 953.

After the collection of the urine, the attendant is required to direct the employee to read and sign the chain of custody form and provide various identification and contact information. *See* 49 C.F.R. § 40.73. The attendant then must ship the specimen to the testing laboratory within 24 hours or the next business day. *See* 49 C.F.R. § 40.73(b).

Upon receipt of the primary and split specimen, the laboratory inspects each and the chain of custody form for "fatal flaws." *See* 49 C.F.R. § 40.83(c). The laboratory is to ensure that the specimen ID numbers on the specimen bottle and the chain of custody form match, that the specimen bottle seal is not broken, and that the collection site attendant has properly completed the chain of custody form. Once the laboratory ensures that no fatal flaws exist, it then tests the primary specimen for marijuana metabolites, cocaine metabolites, amphetamines, opiates metabolites and phencyclidine. *See* 49 C.F.R. § 40.85. The laboratory is not permitted to test the split specimen, only the primary specimen. First, the laboratory tests a portion of the primary specimen for the presence of the above drugs. If this initial test is positive, the laboratory is required to conduct a confirmation test of the primary specimen. *See* 49 C.F.R. § 40.87. The laboratory then reports the result to the Medical Review Officer.

The laboratory is required to report the primary specimen test result only to the Medical Review Officer. *See* 49 C.F.R. § 40.97(b). The laboratory and the Medical Review Officer are required to "ensure that the information is adequately protected from unauthorized access or release, both during transmission and during storage." 49 C.F.R. § 40.97(b)–(c). The Medical Review Officer is responsible for reviewing the laboratory test result and the

chain of custody. *See* 49 C.F.R. §§ 40.123–.129. When the Medical Review Officer receives a positive test result, he must contact the employee before verifying the result. This is done to eliminate legitimate medical explanations of positive test results. *See* 49 C.F.R. §§ 40.123–.131. If after interviewing the employee the Medical Review Officer determines that no legitimate medical explanation exists for the positive test result, the Medical Review Officer must verify the result as positive. *See* 49 C.F.R. §§ 40.137(d), 40.145(g)(1).

However, there are three circumstances in which a Medical Review Officer may verify a positive test result without an interview of the employee: (1) if the employee expressly declines to meet to discuss the test; (2) if the employee is told that he may meet with the Medical Review Officer, but fails to contact said Medical Review Officer within seventy-two hours; or (3) if the Medical Review Officer makes a reasonable effort but is unable to contact the employee. *See* 49 C.F.R. § 40.133(a).

After verifying a test result as positive, the Medical Review Officer must notify the employee of his right to request that the split specimen be forwarded and tested by a second laboratory. *See* 49 C.F.R. § 40.153(a). After notification, the employee has seventy-two hours to request that the split specimen be tested. *See* 49 C.F.R. §§ 40.153(b), 40.171(a). However, an employee that fails to meet this seventy-two hour deadline may present information to the Medical Review Officer in an effort to excuse the failure to make a timely request. *See* 49 C.F.R. § 40.171(b). If the Medical Review Officer concludes that the failure was excusable, he must order the test of the split specimen as if the request was timely made. *See* 49 C.F.R. § 40.171(b).

After verification, it is also the Medical Review Officer's responsibility to report the drug test result to the employer. *See* 49 C.F.R. §§ 40.163(a), 40.167(a). The Medical Review Officer is generally to report the drug test result only to the employer's "Designated Employer Representative." *See* 49 C.F.R. §§ 40.165, 40.3. Even if the employee requests that the split specimen be tested, the Medical Review Officer still must inform the Designated Employer Representative of the positive test result on the primary specimen. *See* 49 C.F.R. § 40.187, 40.137, 40.145. Upon the testing of the split specimen, the Medical Review Officer reports the results of the split specimen test to the employer as well as the employee. *See* 49 C.F.R. § 40.187.

Where the chain of custody form indicates that a split specimen was collected, but the split specimen is not provided to the laboratory along with the primary specimen, the laboratory must nevertheless test the primary specimen using the above procedures. *See* 49 C.F.R. §§ 40.83(h), 40.175(b). In this situation, the laboratory is prohibited from notifying the Medical Review Officer of the unavailable split specimen. *See* 49 C.F.R. § 40.175(b)(1). Upon a positive test result of the primary specimen, and a request by the employee that the split specimen be tested, the laboratory is to then inform the Medical Review Officer that the split specimen is unavailable for testing. *See* 49 C.F.R. § 40.175(b)(2). The Medical Review Officer is then required to cancel the confirmed positive test result. *See* 49 C.F.R. § 40.201(e). The employee is then retested under observed testing conditions. *See* 49 C.F.R. § 40.201(e).

Plaintiff's state court Complaint alleges the following:

On September 25, 2001, Plaintiff's employer ordered him to appear at Concentra at Mabelvale Plaza for the purpose of taking a random drug test. Plaintiff gave his urine sample. However, the nurse, Jane Doe, threw away the Airborne Express pouch and the sample box, saying that she "knows this is negative." Accordingly, Jane Doe tossed the sample away, and kept only one urine sample, contrary to federal regulations. Plaintiff was employed as a truck driver, and this urine test was taken in order to comply with the Federal Department of Transportation policy on random drug testing. Accordingly, under federal regulations, one or more of the defendants was required to contact Plaintiff within twenty-four to thirty-six hours after any drug screen is returned positive. However, one or more of the defendants failed to contact Plaintiff within the time allowed by federal law and regulation. Furthermore, one or more of the defendants was also required to contact Plaintiff's supervisor. None of the defendants ever contacted Plaintiff's supervisor. In fact, Plaintiff alleges that one or more of the defendants negligently failed to keep a split sample, negligently failed to contact Plaintiff in order to allow him an opportunity to explain any false positives, and negligently failed to abide by federal regulations. As a result of the drug test, Plaintiff's employer terminated his employment. But for Defendants' report of the drug test, Plaintiff would not have been fired.

The Defendants specifically deny that Concentra did not collect a split specimen. In fact, LabOne asserts that it, as the testing laboratory, is in possession of the split specimen. Nevertheless, for purposes of the instant remand motion and in determining whether Plaintiff's claims are preempted, the Court must assume the truth of Plaintiff's allegations.

The Plaintiffs are attempting to hold the Defendants liable under a state law standard of care for: (1) not taking a split sample; (2) not contacting the Plaintiff within twenty-four to thirty-six hours after a positive test result; and (3) not contacting Plaintiff's supervisor. If this suit proceeds as stating state law theories of recovery, the Defendants could be found liable for conduct specifically addressed by the federal regulations at issue. In such a circumstance, a jury would be imposing tort standards inconsistent with the FOTETA regulations, or at least standards serving as an obstacle to the accomplishment and execution of the drug testing procedures. FOTETA expressly provides that in this circumstance, the state standard is preempted. *See* 49 U.S.C. § 31306(g); 49 C.F.R. § 382.109.

First, if Concentra or their representative failed to split the urine specimen, or if LabOne failed to retain the split specimen, the collected sample is not voided. The regulations specifically provide that the sample is to be tested by the laboratory as if it were the primary sample, and the results forwarded to the Medical Review Officer. *See* 49 C.F.R. §§ 40.175, 40.83(h). Only if the sample tests positive for drug usage, and the employee requests that the split specimen be tested, would the laboratory inform the Medical Review Officer that a split specimen is not available. *See* 49 C.F.R. § 40.175(b)(2). The Medical Review Officer is then required to cancel the confirmed positive test result, and the employee is summarily retested, albeit this time under observed testing conditions. *See* 49 C.F.R. § 40.201(e). If the employee does not request a test of the unavailable split specimen, the test result would stand, and the Medical Review Officer would verify the result, and inform the employee and the employer of the positive test result. To hold the Defendants liable for their alleged conduct under a state law standard of care would frustrate or serve as an obstacle to the express provisions of the FOTETA regulations, and could require future conduct in variance to said regulations. For this reason, Plaintiff's state law claim for the alleged failure to take or retain a split sample is preempted.

Second, if the Medical Review Officer failed to contact the Plaintiff within thirty-six hours after a positive test result, this does not void a positive test result. The Court notes that the Plaintiff does not allege that the Medical Review Officer did not contact him, only that he did not contact him within thirty-six hours of the positive test result. The Court is unsure of the basis for Plaintiff's claim that the Medical Review Officer must contact him within thirty-six hours after a confirmed positive test result. *See generally* 49 C.F.R. § 40.131. To require the Medical Review Officer to actually contact an employer within thirty-six hours of a confirmed positive test result would be to impose a requirement inconsistent with the federal standards. Even if the Medical Review Officer failed to make actual contact with the Plaintiff, the regulations clearly provide that a drug test result may be verified as positive without the Medical Review Officer making actual contact with the Plaintiff, if the Medical Review Officer made a "reasonable effort" to do so. *See* 49 C.F.R. § 40.133(a). To hold the Defendants liable under a state law standard of care for Dr. Lappe's alleged failure to contact the Plaintiff within thirty-six hours of the confirmed positive test result would also frustrate or serve as an obstacle to the express provisions of the FOTETA regulations, and could require future conduct in variance to said regulations. For this reason, Plaintiff's state law claim for the alleged failure to contact him within thirty-six hours is preempted.

Third, the regulations do not require any of the Defendants to contact Plaintiff's

supervisor upon a confirmed positive test result. In the typical case, it is the Medical Review Officer's sole responsibility to contact the employer's Designated Employer Representative [6] as well as the employee. To hold the Defendants liable under a state law standard of care for their alleged failure to contact the Plaintiff's supervisor would also frustrate or serve as an obstacle to the express provisions of the FOTETA regulations, and could require future conduct in variance to said regulations. For this reason, Plaintiff's state law claim for the alleged failure to contact his supervisor is preempted.

The Court thus finds all of Plaintiff's state law allegations preempted by the FOTETA regulations. The Court also disagrees with Plaintiff's contention that he is without a remedy if the Defendants violated the FOTETA regulations in conducting his drug test. An individual alleging that his urine specimen was incorrectly tested may file a complaint and initiate an administrative proceeding before the Assistant Administrator of the Federal Motor Carrier Safety Act, who serves as the Chief Safety Officer of the Federal Motor Carrier Safety Administration. *See* 49 C.F.R. §§ 386.12, 386.11, 386.1. The Assistant Administrator has the authority to investigate any alleged violation of the Federal Motor Carrier Safety Regulations, 49 C.F.R. §§ 350–399, and to provide a remedy. *See* 49 C.F.R. §§ 386.1, 386.11, 386.21.

In the alternative, the Court concludes that even if Plaintiff's claims are not expressly preempted, they are preempted under an implied theory of preemption. The Department of Transportation, in promulgating the extensive FOTETA regulations regarding the method and manner of drug testing of transportation employees, and in providing an administrative remedy of the violation of said regulations, has occupied the field of drug testing of transportation employees. Furthermore, as noted in the above discussion, Plaintiff's specific claims actually conflict with the FOTETA regulations.

## III. Conclusion

IT IS THEREFORE ORDERED that Plaintiffs Motion to Remand [7] be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiff has up to and including July 8, 2002, to file responses to Defendant Concentra's Motion to Dismiss (Doc. No. 3) and Defendant LabOne, Inc.'s Rule 12(b)(6) Motion to Dismiss (Doc. No. 5).

---

**6.** The Plaintiff does not allege that the Defendants failed to contact his employer. Because the Plaintiff alleges that his employer fired him for failing the drug test, the Court as-

sumes that the Medical Review Officer communicated the results of the drug test to it.

**7.** Doc. No. 8.