**Anthony T. FIFIE, Plaintiff,**

v.

**Charles D. COOKSEY,
M.D., Defendant.**

No. 3:03–CV–158–J–TEM.

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 16, 2005.

Anthony J. DiFilippo, The Difilippo Law Firm, Kristen Zedella Watson, Clark & Watson, P.A., Jacksonville, FL, for Anthony T. Fifie, Plaintiff.

Harvey L. Jay, III, Saalfield, Shad, Jay, Lucas & Stokes, P.A., John Robert Saalfield, Saalfield, Shad, Jay, Lucas & Stokes, P.A., Mandy J. Locke, Saalfield, Shad, Jay, Lucas & Stokes, P.A., Jacksonville, FL, for Charles D. Cooksey M.D., Defendant.

### *ORDER*

MORRIS, United States Magistrate Judge.

This case was removed to federal court by the Defendant, who is being sued by Plaintiff for compensatory damages for alleged negligence under Florida law concerning the reporting of drug test results of a railway employee. Defendant asserts that federal law and regulations have completely preempted any claims concerning drug testing of railway employees and that the case should be dismissed. Plaintiff claims he is not relying on federal regulation, that state common law provides the basis for his suit and the case should be remanded to state court.

The Court has before it Plaintiff's Motion for Remand (Doc. # 6) and Defendant's Motion to Dismiss (Doc. # 3), their oppositions to each motion (Docs. # 8 and # 9) and the memorandums and notices of supplemental authority (Docs. # 7, # 15 and # 19). Oral argument was held (Doc. # 20) during which three exhibits were introduced without testimony (see Docs. # 17 and # 18, attachments).

*Background:*

Plaintiff was an employee of Florida East Coast Railway Company (FEC) who, apparently after a previous positive drug test, the details of which are not in the record (see Doc. # 20 at 9), had accepted opportunity under a second chance agreement between FEC and United Transportation Union to maintain employment (Doc. # 17, Exhibits 1 and 2). Plaintiff was scheduled to work as a yard engineer on January 14, 1996 (Doc. # 20 at p. 5; Doc. # 17, Exhibit 1). On that date, he was called to come to work about one-and-a-half hours early for administration of a drug test. A urine sample was taken and Plaintiff was provided a form indicating the test was taken pursuant to federal regulations for testing of railway employees.[1]

Defendant was a medical review officer (MRO) who administered the 1996 urine test, in which a split sample was created. According to the complaint, the defendant notified Plaintiff about two weeks later that the test came back positive for marijuana. Plaintiff then requested the split portion of the urine sample be sent to a different laboratory for testing. Plaintiff alleges Defendant prematurely and negligently notified FEC of the positive test results before the split sample had been tested and this action led to his dismissal from employment. A week later, Defendant allegedly learned that the split sample was destroyed by the laboratory without being tested. Plaintiff claims destruction of the split portion of the urine sample should have invalidated the test and FEC should have been notified of such by Defendant. Plaintiff claims he did not learn of the destruction of the split sample until on or about January 7, 2000. He then sought, and obtained, reinstatement from FEC through administrative procedure. Plaintiff seeks

---

1. The railway later claimed during an administrative proceeding the form was used erroneously (Doc. # 18, Defendant's Exhibit 1; Doc. # 17, Plaintiff's Exhibit 1).

compensatory damages for the period between his dismissal on January 29, 1996 and his re-employment in 2000.

### The issues:

Plaintiff claims that his complaint does not mention federal regulation and under the "well-pleaded complaint" doctrine a defendant may not remove a case to federal court based on a federal law defense. (Doc. # 8). Second, he claims the complete preemption doctrine should not apply since he is not relying on federal law or regulation (Doc. # 6). Third, at oral argument he claimed the case should be remanded to state court because the test was not officially administered under federal regulations, but rather by the "second chance" agreement between the company and the union, and that as an off-duty employee the regulations would not apply to him.

Defendant claims federal law completely preempts state claims based concerning drug testing of railroad employees (Doc. # 7), and that the federal regulations specifically state they do not create a private right of action (Doc. # 7). Defendant notes that Plaintiff originally filed a lawsuit in state court citing the federal regulations, but later dismissed it prior to filing the current action (Doc. # 3, Exhibit A). Although the current complaint does not directly mention, or seek to rely, on the federal regulations, Defendant claims that Plaintiff should not be allowed to controvert his prior complaint. (See Doc. # 9). Lastly, Defendant argued that there is no Florida common law basis for the litigation.

### Analysis:

#### Preemption law

Under the Supremacy Clause of the Constitution, federal law is the "supreme Law of the Land." U.S. Const. art. VI, cl. 2. Not every federal statute or regulation has been intended to override state authority, however. A body of preemption law has arisen to resolve conflicts between federal and state statutes or authority.

■■■■ "Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp. Inc. v. Easterwood,* 507 U.S. 658, 663, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by the state law will be reluctant to find preemption." *Id.* at 663–664, 113 S.Ct. 1732.

The Supreme Court has stated there are three circumstances in which preemption may be found: (1) express preemption from the terms of a statute, (2) "field preemption" which can be inferred or implied from the pervasiveness of a federal scheme leaving no room for a state to supplement it, or (3) conflict preemption, where the state law would conflict with federal law so that it is impossible for a private party to comply with both. *English v. General Electric Co.,* 496 U.S. 72, 78–9, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). *See also Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113, 1122 (11th Cir.2004).

Under Title 28, U.S.C. § 1441, civil actions brought in state court may be removed to federal court by a defendant only if the case could have been filed in federal court. Under the "well-pleaded complaint rule" courts will examine the face of the complaint to see if a federal question is presented. *Caterpillar v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A plaintiff thus becomes "master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

A state case ordinarily may not be removed to federal court on the basis of a federal defense, including preemption. *Id.* at 393, 107 S.Ct. 2425. There is, however, one exception to that rule known as the "complete preemption doctrine." Occasionally the court has found the preemptive force of a statute is so extraordinary that it "converts an ordinary state common law complaint into one stating à federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

To determine whether a federal statute provides complete preemption, courts have looked at the language of the statute (*see, e.g. Sprietsma v. Mercury Marine*, 537 U.S. 51, 62–63, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002)), the purpose of the statute (*Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)) and regulations issued by the federal agency charged with enforcing the statute (*CSX Transportation v. Easterwood*, 507 U.S. 658, 662, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)).[2] As *Easterwood* indicates, federal regulations also may provide complete preemption.

■ Although preemption may be express in a statutory provision or implied from it (*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)), where Congress has explicitly defined the preemptive reach of a statute, it generally is inappropriate to look beyond that provision to imply broader preemption. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287–9, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248 (11th Cir.2003). In *Branche,* the court said that where a legislative enactment contains an express preemption clause, the court usually will not look further toward implied preemption, but will look only to see if the state law in question "is within the scope of the statute expressly promulgated by Congress." *Branche, supra,* 342 F.3d at 1253.

Defendant asserts that the federal drug testing statutes and regulations completely preempt state common law. Plaintiff argues that his "well pled" complaint is not based on federal law and that the federal regulatory scheme does not completely preempt state law for negligence in not notifying Plaintiff and his employer that the split sample had been destroyed, making the results of the test invalid.[3]

### Statutory and Regulatory Framework

Under 45 U.S.C. § 431, the Secretary of Transportation has authority to enact regulations to provide for "all areas of railroad safety." In 1985, in response to train accidents, the Secretary, through the Federal Railroad Administration (FRA), adopted regulations to control the use of alcohol and drugs in the operation of rail-

---

**2.** As the complete preemption doctrine has emerged, there are three substantive areas in which the Supreme Court has applied it: (1) Actions under Section 301 of the Labor Management Relations .Act *Avco Corporation v. Aero Lodge No. 735, IAMAW*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); (2) Section 502(a) of the Employee Retirement Income Security Act ("ERISA") (*Metropolitan Life, supra,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55); and,(3) the National Bank Act, Title 12, U.S.C. 85, 86, regulating usurious interest rates (*Beneficial National Bank, supra,* 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1).

**3.** The DOT regulations provide that a medical review officer who discovers the second part of a split sample is not available for testing "must" inform the employer and employee that both tests must be cancelled. 49 C.F.R. § 40.187 (2005).

roads. Control of Alcohol and Drug Use in Railroad Operations, 50 Fed.Reg. 31,508 (Aug. 2, 1985) (later codified at 49 C.F.R. pts. 212, 217–219, 225). The FRA noted that the Federal Highway Administration and the Federal Aviation Administration already had enacted regulations to deal with drug and alcohol use by truck drivers and flight crew members. *See* 50 Fed. Reg. at 31,509.

The initial regulations required toxicological testing of railroad employees only under certain circumstances, such as after an accident or upon reasonable cause. *Id.* at 31,531. The FRA later implemented a random drug testing program in 1988. Random Drug Testing, 53 Fed.Reg. 47,102 (Nov. 21, 1988) (later codified at 49 C.F.R. pts. 217, 219).

In *Chapman v. Lab One*, 390 F.3d at 623, 624, the court undertook a thorough analysis of the statutory and regulatory provisions of both the FRA and the Federal Omnibus Transportation Employee Testing Act of 1991 (FOTETA). The court noted that in the initial enactment in 1985, the FRA specified that although employees were required to sign a consent form in connection with drug testing, that requirement "did not require an employee to waive any claim for malpractice with respect" to the handling of samples. *Id.* at 623 *quoting* 50 Fed.Reg. at 31,532.

When the FRA implemented the random drug testing program in 1988, the FRA specifically noted that some states had enacted laws limiting or regulating drug testing by private employers and explained that the FRA regulations "will preempt any state legislation regarding random drug testing, whether or not inconsistent with the final rule." 53 Fed. Reg. at 47,122.

A year later, however, the FRA amended the regulations to be consistent with drug testing procedures issued by the DOT, and added this provision against waiver of rights by employees:

"An employee required to participate in body fluid testing ... shall ... evidence consent to taking of samples .... The employee is not required to execute any document or clause waiving rights that the employee would otherwise have against the employer, and any such waiver is void. The employee may not be required to waive liability with respect to negligence on the part of any person participating in the collection, handling, or analysis of the specimen or to indemnify any person for the negligence of others." 54 Fed.Reg. 53,238 at 53,261; *see also* 49 C.F.R. § 219.11(d) (1989).

The FRA stated it "cannot require that employees sign away their rights against third parties." 54 Fed.Reg. at 53,242. The FRA also incorporated the Secretary of Transportation's scientific and technical drug testing guidelines set forth in 49 C.F.R. pt. 40, which by then included an identical anti-waiver provision at 49 C.F.R. § 40.25(f)(22)(ii) (1989). 54 Fed.Reg. at 53,273; *see also* 49 C.F.R. § 219.701(c) (1989). The FRA anti-waiver provision is still in effect. 49 C.F.R. § 219.11(d) (2004). The Department of Transportation revised its general drug testing regulations in 2001, but continues to prohibit employers from requiring an employee to sign a "waiver of liability ... with respect to any part of the drug or alcohol testing process." 49 C.F.R. § 40.27 (2004).

Congress in 1991 mandated drug testing in the railroad industry by enactment of FOTETA[4], which amended the Federal

---

**4.** Federal Omnibus Transportation Employee Testing Act of 1991, Pub.L. No 102–143, § 4,

105 Stat. 917, 957–59 (1991). The act contained separate provisions for different types

Railroad Safety Act (FRSA). 49 U.S.C. § 20140(b). In requiring the Secretary to prepare regulations, however, the statute allowed those regulations already in effect to remain or be amended or supplemented. 49 U.S.C. § 20140(f).

The FOTETA provides that states "may adopt or continue in force a law, regulation, or order related to railroad safety" until the Secretary of Transportation issues a regulation or order covering the same subject matter. 49 U.S.C. § 20106.[5]

The drug testing regulations state they preempt "any State law, rule, regulation, order or standard covering the same subject matter," except for certain local hazards. 49 C.F.R. § 219.13(a) (2004).[6] The railroad regulations (49 C.F.R. part 219) adopt the general DOT compliance standards for drug testing contained in 49 C.F.R. part 40. 49 C.F.R. § 219.701 (2004).

### Case analysis

#### A. Railroad cases:

Defendant initially relied on two district court opinions, *Chapman v. LabOne*, 252 F.Supp.2d 814 (S.D.Iowa 2003) and *Howell v. Lab One*, 225 F.Supp.2d 1168 (D.Neb. 2002), in arguing that the federal regulations preempted the state lawsuit. Both of those cases were overturned by the Eighth Circuit Court of Appeals in *Chapman v. Lab One*, 390 F.3d 620 (8th Cir.2004), holding that the FRA regulations do not preempt suits for negligence against those handling drug testing.

Chapman and Howell had each filed suit in state courts alleging common law claims against Lab One concerning alleged mishandling of urine samples that the company had reported to railroad employers as not consistent with human urine. Both employees were then terminated from employment. Chapman had sued only Lab One and the district court had held the FRSA and regulations had "substantially subsumed the subject matter of state tort law" on drug testing standards, thus preempted the area. Howell had sued both Lab One and the Union Pacific Railroad. The court denied Howell's motion to remand the case back to state court, finding complete preemption by federal law,

---

of transportation. For railroads, the provisions are codified in 49 U.S.C. § 20140. Airline provisions are codified in 49 U.S.C. § 45101 et seq. Trucking provisions are codified at 49 U.S.C. § 31306.

**5.** 49 U.S.C. § 20106. National uniformity of regulation

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order-

(1) is necessary to eliminate or reduce an essentially local safety hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.

**6.** § 219.13 Preemptive effect.

(a) Under section 20106 of title 49, United States Code, issuance of the regulations in this part preempts any State law, rule, regulation, order or standard covering the same subject matter, except a provision directed at a local hazard that is consistent with this part and that does not impose an undue burden on interstate commerce.

(b) FRA does not intend by issuance of the regulations in this part to preempt provisions of State criminal law that impose sanctions for reckless conduct that leads to actual loss of life, injury or damage to property, whether such provisions apply specifically to railroad employees or generally to the public at large.

then dismissed the action on the basis that FOTETA doesn't provide for a private right of action. It also dismissed the action against the Union Pacific on the alternate ground that it was preempted by the Railway Labor Act (RLA), 49 U.S.C. § 151.

The Eighth Circuit reversed both decisions. The court found that Congress had given the Secretary of Transportation authority, through 49 U.S.C. § 20106, to preempt state common law claims but that the regulations adopted by the Secretary did not do so. *Chapman,* 390 F.3d at 626–27. The court found particularly persuasive the fact that DOT regulations going back to 1989 specifically prohibited requiring employees to waive liability with regard to negligence claims (49 C.F.R. § 219.11(d) (1989)), and that anti-waiver regulation has continued in effect. *Id.* The court further noted that in 2001 the Secretary had amended the regulations to add a provision that the employer also could not require such a waiver. *Id.,* 66 Fed.Reg. 41,944 (Aug. 19, 2001) codified at 49 C.F.R. §§ 40.27, 40.355(a) (2003). The preservation of the anti-waiver language in the regulations would be inconsistent with finding that preemption did not allow such suits. *Id.*

The *Chapman* court also concluded that neither the FRSA nor FOTETA established a statutory scheme that provided complete preemption. *Chapman,* 390 F.3d at 629. The court noted that the fact the statutes do not provide an independent private right of action for aggrieved parties indicates they are not the type of comprehensive regulatory scheme usually found when Congress wants to preempt an area of law. *Id.*

There are, however, other cases where the courts have found preemption did exist to preclude drug testing negligence lawsuits.

The Fifth Circuit has held that the FRSA, 45 U.S.C. §§ 421–445, and regulations issued thereunder, do not create a private right of action to sue the railroad for mishandling testing samples obtained under the regulations. *Abate v. Southern Pacific Transp. Co.,* 928 F.2d 167, 168 (5th Cir.1991). The court noted that regulation in 49 C.F.R. 219.17(b) specifically states: "Nothing in this part ... [c]reates a private right of action on the part of any person for enforcement of the provisions of this part of for damages resulting from noncompliance with this part." *Id.* Subsequently, the Fifth Circuit held that allegations of problems in testing did not show a constitutional violation to allow a *Bivens* claim[7] and summarily found that state law claims against the railroad with regard to drug testing were preempted by the Federal Employer's Liability Act (FELA), 45 U.S.C. 51. *Abate v. Southern Pacific Transp. Co.,* 993 F.2d 107 (5th Cir.1993). The facts underlying the *Abate* cases were pre-FOTETA.

The lack of creation of a federal right of action was one basis that *Chapman* relied upon in finding no preemptive scheme.

### B. Airline Industry Cases:

The Fifth Circuit also found FOTETA and Federal Aviation Administration (FAA) regulations preempted a federal suit by a mechanic against an airline on state tort claims. In *Frank v. Delta,* 314 F.3d 195 (5th Cir.2002), the court focused on the FAA regulation which stated that "(t)he issuance of these regulations by the FAA preempts any State of local law, rule,

---

**7.** *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

regulation, order or standard covering the same subject matter of this rule, including but not limited to, drug testing of aviation personnel performing sensitive safety-or security-related functions." 14 C.F.R. pt. 121, app. I § XI.A and B (2005)(unchanged since 1989). The court noted the FAA regulation pre-dated FOTETA, but FOTETA specified that "pre-existing drug testing regulations could continue." *Id.quoting* 49 U.S.C. § 45106(c). The statutory preemption language provided that a state or local government "may not prescribe, issue, or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this chapter." 49 U.S.C. § 45106(a). The court noted that under *Easterwood,* 507 U.S. at 664, 113 S.Ct. 1732, a similar description of state provisions was found to include common-law negligence claims. *Frank,* 314 F.3d at 199. The court also distinguished the FAA law and regulations concerning preemption from language in the Federal Railroad Safety Act (FRSA), which it had previously held required a "fairly close correspondence between the federal regulation and the preempted state claim." *Id.* at 199.

Two other courts in ruling on aviation cases have reached a result seemingly contrary to the Fifth Circuit.

In *Ishikawa v. Delta,* 343 F.3d 1129 (9th Cir.2003), *as amended* 350 F.3d 915 (9th Cir.2003), the Court examined federal regulations concerning drug testing of airline employees and concluded that there was no intent to preempt state common law claims against a laboratory performing the drug tests (even though the airline's name appears in the title of the case, the claim that went to trial was against a private laboratory). The court focused on the statutory preemptive language against state provisions "inconsistent" with the regulations and the provision in 40 C.F.R.

§ 40.25(f)(22)(ii)(1998) which expressly provided that employees would "not be required to waive liability with respect to negligence on the part of any person participating in the collection, handling, or analysis of the specimen." *Ishikawa,* 343 F.3d at 1133. "[N]egligence is a state common law tort and it would make no sense for the regulation to prohibit requiring the employee to waive negligence claims if those claims were preempted and could not be made." *Id.* In the amended opinion in *Ishikawa, supra,* 350 F.3d 915, the court noted its decision may not directly conflict with *Frank v. Delta,* discussed *supra,* because *Frank* dealt only with a suit against the airline rather than a private laboratory.

The district court in *Drake v. Laboratory Corp. of America Holdings,* 290 F.Supp.2d 352 (E.D.N.Y.2003) reached a similar conclusion after an exhaustive examination of the federal regulations and their history, as well as Supreme Court preemption cases. The court concluded the purpose of the regulatory preemption language was to prohibit positive state enactments that would prevent or restrict drug testing in the state. *Id.* at 373. The court also found the regulation barring waiver of liability was the functional equivalent of an express savings clause against preemption. *Id.* at 373.

### C. Trucking Industry Cases:

In *Burton v. Southwood Door Co.,* 305 F.Supp.2d 629 (S.D.Miss.2003), the court disallowed removal to federal court of suit against a former employer and testing laboratory for negligence and state law claims in connection with a drug test that the employer was required to administer under a section of FOTETA, Title 49 U.S.C. 31306, and DOT regulations enacted thereunder. The court found that because the regulations did not provide substantive

protection for aggrieved employees, a federal cause of action to remedy or supplant state law, nor a provision for administrative review of the employer's actions, that complete preemption did not apply. *Burton, supra,* 305 F.Supp.2d at 638.

A contrary holding was found in the earlier case of *Rector v. LabOne,* 208 F.Supp.2d 987 (E.D.Ark.2002). The *Rector* court focused on the provision in Section 31306(g) that provides "a state or local government may not prescribe or continue in effect a law, regulation, standard, or order *that is inconsistent with regulations prescribed under this section." Id.* at 991 (emphasis in the original). After a review of the testing procedures required by the regulations, the court concluded that allowing a state suit concerning the handling of drug testing samples would be an obstacle and frustration to the express provisions of FOTETA regulations and require future conduct in variance with the regulations. *Id.* at 996.

However, the Eastern District of Arkansas recently retreated from the position held in *Rector.* In *Glisson v. Occupational Health Centers of Arkansas,* 2005 WL 1922574 (E.D.Ark. Aug. 10, 2005), the court was faced with considering a motion to remand the drug testing litigation to state court. The defendants had removed the case to federal court claiming preemption under FOTETA. Plaintiff had asserted only state common law claims in the complaint. The court noted it carefully considered *Rector,* and found the Eighth Circuit's decision in *Chapman v. Lab One, Inc., supra,* 390 F.3d 620, to be a "better indicator of the law" within that circuit. *Id.* at *3.[8]

### Eleventh Circuit Law

The Eleventh Circuit has not ruled directly on whether federal drug testing

laws preempt state lawsuits for negligence; however, it did hold in *Hughes v. Attorney General of Florida,* 377 F.3d 1258, 1265 (11th Cir.2004) that federal preemption claims were not "facially conclusive" so as to bar state prosecution of airline pilots for flying while intoxicated. Because the court found the claims were not facially conclusive, under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) it held that the district court should have abstained from interfering with a pending state criminal proceeding.

The court noted that field preemption should not be implied "simply because the agency's regulations are comprehensive." *Hughes,* 377 F.3d at 1267, *quoting R.J. Reynolds Tobacco Co. v. Durham County,* 479 U.S. 130, 107 S.Ct. 499, 93 L.Ed.2d 449 (1986). The court also found the fact the FAA regulations in question seemed to recognize the operation of state laws made it difficult to infer field preemption. *Id.* The court also noted the possible conflict between the *Ishikawa* and *Frank* cases. *Id.* at 1270 n. 14, 1274 n. 21. The court further found no express preemption was facially apparent because it was not clear that the state law covered the same "subject matter" as the FAA regulation. *Id.* at 1273.

### Conclusion

■ This Court finds the detailed analysis in *Chapman* and *Drake* persuasive. The FRSA and FOTETA provide for drug testing of railroad industry employees, and preempt any state from excluding its residents from such testing. The FRSA in stating that laws relating to railroad safety shall be "nationally uniform to the extent practicable" does not totally preempt all state action, but provides that states may adopt or continue "law, regulation or order" relating to railroad safety until the

---

8. The Eastern District Court of Arkansas is

within the Eight Circuit Court of Appeals.

Secretary of Transportation prescribes regulation "covering the subject matter of the State requirement." 49 U.S.C. § 20106.

The Supreme Court in *Easterwood*, 507 U.S. at 664, 113 S.Ct. 1732, stated that " 'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulation substantially subsume the subject matter of the relevant state law." In *Frank*, 314 F.3d at 200, the Fifth Circuit found the FAA regulations contained a broader preemption, reasoning that there is a stronger federal interest in airline safety than railroad safety and that states traditionally have had more authority in railroad safety than aviation safety.

Even if a state tort action for mishandling drug testing samples or reporting of them relates to "railroad safety," it is clear that the Secretary of Transportation has not issued regulations concerning suits against third parties involved in the drug testing process. Instead, although the DOT has stated the regulations do not create a private right of action, it also specifically has provided that employees do not have to waive negligence actions against those handling the required drug testing samples. Thus, preemption cannot be found from the DOT or FRA regulations.

Moreover, the Court must presume Congress knew what regulations the DOT had issued when it enacted FOTETA in 1991 and specifically provided that the drug testing law "does not prevent the Secretary of Transportation from continuing in effect, amending, or further supplementing a regulation proscribed or order issued before October 28, 1991, governing the use of alcohol or a controlled substance in railroad operations." 49 U.S.C. § 20140(f). The anti-waiver provision thus would have been within Congressional knowledge. That further indicates that Congress did not intend complete preemption of state lawsuits such as Plaintiff filed.

Lastly, it is clear there is no conflict preemption, since it is not inherently impossible to comply with the federal regulations and do it in a manner not violating the claimed duty of care under Florida law. Indeed, although Plaintiff now claims not to be relying on the federal regulations as to handling of split samples, those regulations, particularly in 49 C.F.R. § 40.187 (2005), require notification such as Plaintiff claims the state duty of care requires.

In this case, Plaintiff cannot use the regulations to create a cause of action, but to the extent he can prove failure to inform the railroad about the botched split sample is, in fact, a violation of duty under state law, that claim is not preempted. Whether *Ragsdale v. Mount Sinai Medical Center of Miami*, 770 So.2d 167 (Fla. 3d DCA 2000) is authority for such a suit is a matter for the state court. Since the case is not subject to complete preemption based on federal law, there is no reason for it to remain in federal court.[9]

---

9. The Court has considered Defendant's argument that Plaintiff should not be allowed to controvert his prior complaint, but does not find it persuasive. In *Soo Line Railroad Co. v. St. Louis Southwestern Railway Co.*, 125 F.3d 481, 483 (7th Cir.1997), the plaintiff attempted to deny facts alleged in its pending complaint in an attempt to defeat a motion to dismiss. The court held that the pleadings are admissions and binding on the party making them. As the second case cited by Defendant states, however, a party "is not prevented from amending these admissions." *Gerlach v. Volvo Cars of North America*, 1997 WL 129004, *4 (E.D.Pa. March 17, 1997). The court noted a party may amend pleadings previously admitted, "because consistency with prior pleadings is not required." *Id.,citing Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537 (8th Cir.1977). The court noted that the opposing side may seek to admit the original pleading into evidence, *Gerlach*,

Thus, the Court **GRANTS** Plaintiff's Motion for Remand (Doc. # 6) and **DE-NIES** Defendant's Motion to Dismiss (Doc. # 3). This action is remanded to the Fourth Judicial Circuit Court, in and for Duval County, Florida, from which it was removed. Thereupon, the Clerk shall close this file.

1997 WL 129004, *4 n. 2. Whether that provision would apply when the original complaint was dismissed voluntarily (*see Wilson v. City of San Jose,* 111 F.3d 688, 692 (9th Cir.1997)), or its effect if it is applicable, this Court need not decide. Those matters would be for the state judge to decide under Florida law.