**Raymond BURTON Plaintiff**

v.

**SOUTHWOOD DOOR COMPANY, MEA, INC. and Medical Group South Defendants**

**No. CIV.A. 4:02CV107LN.**

United States District Court, S.D. Mississippi, Eastern Division.

July 7, 2003.

Steven Douglas Slade, Meridian, MS, for Plaintiff.

Robert Mark Hodges, Brenda M. Currie, Wise, Carter, Child & Caraway, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on plaintiff Raymond Burton's motion to remand. Defendants Southwood Door Company, MEA, Inc. and Medical Group South (MGS) have responded in opposition to the motion and have moved contemporaneously to dismiss plaintiff's claims with prejudice. The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Plaintiff was formerly employed as an over-the-road truck driver for Southwood Door. In that job, he was subject to Department of Transportation (DOT) regulations requiring random drug testing of workers engaged in "safety-sensitive" tasks, 49 C.F.R. §§ 382.301, 382.305 (1999), said regulations having been promulgated pursuant to the Federal Omnibus Transportation Employee Testing Act (FOTE-TA), 49 U.S.C. § 31306, which, by its express terms, requires the Secretary of Transportation to promulgate regulations requiring "testing of operators of commercial motor vehicles for the use of a controlled substance." 49 U.S.C. § 31306(b)(1)(A).[1]

In July 1999, Burton was terminated after a random drug test performed on behalf of Southwood by MGS and MEA was reported as positive for marijuana usage. Plaintiff filed this action in the Circuit Court of Clarke County, Mississippi, on March 19, 2002 against Southwood, MGS and MEA asserting a claim of common law negligence, based on allegations, *inter alia,* that defendants' negligence in conducting the test resulted in a false-positive result, and also claiming defamation, based on allegations that defendants communicated to prospective employers that he had been terminated as result of a positive drug test result, causing him to lose employment opportunities.

Defendants removed the case to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331, contending that inasmuch as plaintiff's complaint alleges that defendants' actions violated FOTETA and its implementing regula-

---

1. FOTETA amended the Federal Commercial Motor Vehicle Safety Act of 1986 to provide:

   In the interest of commercial motor vehicle safety, the Secretary of Transportation shall prescribe regulations that establish a program requiring motor vehicle carriers to conduct preemployment, reasonable suspicion, random, and post-accident testing of operators of commercial motor vehicles for the use of a controlled substance in violation of law or a United States Government regulation and to conduct reasonable suspicion, random, and post-accident testing of such operators for the use of alcohol in violation of law or a United States Government regulation. The regulations shall permit such motor carriers to conduct preemployment testing of such employees for the use of alcohol.

   49 U.S.C. § 31306(b)(1)(A). Pursuant to this directive, the Secretary of Transportation promulgated the Controlled Substances and Alcohol Use and Testing regulations. *See* 49 C.F.R. § 382.101 *et seq.* The regulations, in part, require that truck drivers holding commercial driver's licenses be subject to random drug testing by their employers, *see* 49 C.F.R. § 382.305, and also require that the drug testing procedures comply with the scientific and technical procedures set forth in the DHHS Procedures for Transportation Workplace Drug and Alcohol Testing Programs regulations, 49 C.F.R. § 40.1 *et seq., see* 49 C.F.R. § 382.105.

tions, plaintiff's putative state law claims are preempted by FOTETA, thus giving rise to jurisdiction. Plaintiff maintains otherwise, and has moved to remand.

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Thus, for the district court to have removal jurisdiction, 28 U.S.C. § 1441(a) requires that the case be one over "which the district courts of the United States have original jurisdiction." District courts have original jurisdiction over cases concerning a "federal question," that is, cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

■■■■ The determination whether a plaintiff's claim arises under federal law is made by examining the "well pleaded" allegations of the complaint, ignoring potential defenses. Under this "well pleaded complaint" rule, " 'a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. . . .' " *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003) (citations omitted). Thus, "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id. See also Heimann v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir.1999) ("It is well-settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.").

In his complaint in the case at bar, Burton asserts that at no relevant time prior to the drug test in question had he taken or been exposed to any illegal narcotic or other legally prescribed compound, and that the test produced a false-positive result. He attributes this to negligence on the part of defendants, alleging that the urine specimen was collected negligently, grossly negligently or recklessly by the employee of MCG so that the specimen was either contaminated and/or confused with another specimen. Plaintiff alleges specifically that the specimen "was not collected in a manner prescribed by the policies generated by Southwood Door, the DOT, and/or established procedural methods for the collection of such specimens so as to conform with minimally accepted professional pathology standards." Plaintiff complains additionally that the test results were negligently communicated to him, in that an employee of MEA contacted him to advise him of the test results despite a requirement of Southwood Door and the collection facilities that a physician notify Burton if a positive result were obtained. He further charges that despite his having communicated to defendants that he disputed the test results, MEA destroyed or otherwise subjected the specimen to spoliation in disregard of its duties as to possession of contested specimens. And he alleges that despite DOT random drug testing regulations, he was not given subsequent confirmation tests and provided counseling and evaluation by a substance abuse professional preliminary to discharge, and instead, Southwood Door, MGS and MEA, "on [their] own initiative and thus in violation of Federal law altered this law and procedure and discharged Burton immediately upon receipt of the false-positive drug test," by which actions defendants "were negligent *per se,* and grossly negligent, with respect to the Federal guidelines."[2]

**2.** The DOT regulations to which plaintiff's    complaint alludes provide that a driver who

Burton complains, finally, that following his termination, he sought employment as a truck driver with other companies, each of which was required to and did contact Southwood Door, and each of which was informed by Southwood Door that Burton had been terminated for testing positive, and none of which were advised of subsequent drug tests which rendered negative results.[3] Plaintiff thus alleges that as a result of this "negligent, grossly negligent and false communication," he was not offered a job.

█ In their response to plaintiff's motion to remand, defendants point out that Burton has specifically alleged in his complaint that defendants' actions with respect to the handling of plaintiff's drug test violated the DOT regulations on random drug testing in a number of particulars. Defendants thus consider it apparent that plaintiff's complaint arises under federal law. It appears to the court, however, that

plaintiff has not undertaken to allege a claim arising under federal law, but rather has identified defendant's violation of federal regulations as a basis for his state law claims of negligence and/or negligence per se. The first, question, then, is whether plaintiff's invocation of federal law as part of his state law negligence/negligence per se claim is sufficient to impart jurisdiction to a federal court under 28 U.S.C. § 1331. In the court's opinion, it is not.

█ The federal courts have recognized "exceptions" to the well-pleaded complaint rule, one of which permits federal courts to exercise jurisdiction over actions that raise a substantial question of federal law, even where the plaintiff has not purported to seek relief under federal law but has instead undertaken to assert his claims under state law. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.2001); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1169 (5th Cir.1988).[4] In *Howery*, the Fifth Cir-

---

has tested positive for drugs cannot return to a safety-sensitive position until (1) the driver has been evaluated by a "substance abuse professional" to determine if treatment is needed, 49 C.F.R. § 382.605(b) (1999); (2) the substance-abuse professional has certified that the driver has followed any rehabilitation program prescribed, § 82.605(c)(2)(i); and (3) the driver has passed a return-to-duty drug test, § 382.605(c)(1). Interestingly, the regulations do not require employers "either to provide rehabilitation or to 'hold a job open for a driver' who has tested positive, on the basis that such decisions 'should be left to management/driver negotiation.'" *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 57, 65, 121 S.Ct. 462, 468, 148 L.Ed.2d 354 (2000) (quoting 59 Fed.Reg. 7502 (1994)). In other words, the DOT has established as the "only driving prohibition period for a controlled substances violation," the "completion of rehabilitation requirements and a return-to-duty test with a negative result," *id.* (quoting 59 Fed.Reg. 7493 (1994)), and there is nothing in the Act or regulations to preclude termination of an employee for a positive drug test.

3. Burton alleges that upon learning of the false-positive result and his termination, he undertook another drug test at his own expense, and provided the negative results from that test to Southwood Door. However, Southwood Door did not reinstate him. It did pay for his referral to a substance abuse professional, who recommended a hair test (that would detect drug usage within a ninety-day period); and although Southwood Door refused to pay for this test, plaintiff undertook the hair test at his own expense, and provided the negative test results to Southwood Door, which still refused to reinstate him.

4. Whether the presence of a "substantial federal question" in a given case remains a proper basis for removal would seem somewhat in doubt in light of the Supreme Court's declaration in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003), that

> a state claim may be removed to federal court in only two circumstances—when Congress expressly so provides, such as in the Price–Anderson Act, ... or when a federal statute wholly displaces the state-law

cuit held that in such a circumstance, at least in the absence of complete preemption,[5] "[f]ederal jurisdiction is sustainable . . . only if [the plaintiff's] [state law] claim requires resolution of a substantial question of federal law." *Howery*, 243 F.3d at 918. The court set forth a three-part test for determining federal jurisdiction under § 1331 when a complaint under state law mentions a federal law: (1) whether the federal right is an essential element of the state claim, (2) whether the interpretation of the federal right is necessary to resolve the case, and (3) whether the question of federal law is substantial. *Id.* at 918. The Fifth Circuit has repeatedly emphasized, though, that a necessary predicate for an exercise of federal jurisdiction on the basis of a substantial federal question, is the existence of a private, federal remedy. As aptly put by one court,

> The presence of a federal remedy in a statute is a minimum threshold requirement to determine whether Congress intended for federal courts to adjudicate state-court actions. Following controlling Fifth Circuit jurisprudence, "we begin with the minimum requirement that the federal statutes involved provide a private, federal remedy." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1169 (5th Cir.1988)(citing *Merrell Dow*, 478 U.S. at 813–816, 106 S.Ct. 3229, 92 L.Ed.2d 650). Here, as in that case, no private remedy exists. That is the end of the issue, and has been since the Supreme Court decided *Merrell Dow*. "The significance of the necessary assumption that there is no federal private cause of action thus cannot be overstated." *Merrell Dow*, 478 U.S. at 812, 106 S.Ct. 3229, 92 L.Ed.2d 650.

*Brock v. Provident America Ins. Co.*, 144 F.Supp.2d 652, 657 (N.D.Tex.2001). *See also Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 814, 106 S.Ct. 3229, 3235, 92 L.Ed.2d 650 (1986) ("[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently substantial to confer federal question jurisdiction."); *Willy*, 855 F.2d at 1169 (recognizing "minimum requirement that the federal statutes involved provide a private, federal remedy"); *Rodriguez v. Shell Oil Co.*, 818 F.Supp. 1013, 1017 n. 7 (S.D.Tex.1993) (holding that "a claim alleging a violation of a federal statute is not removable to federal court if no private right of action exists under the federal statute") (citing *Merrell Dow* ).

█ Numerous courts have concluded that there is no private right of action to enforce DOT drug testing regulations under FOTETA, *see, e.g., Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 308–09 (6th Cir.2000); *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170–71 (2d Cir. 1998); *Byrne v. Massachusetts Bay Transp. Auth.*, 196 F.Supp.2d 77, 87 (D.Mass.2002); *Saulsberry v. Laboratory Corp. of America*, No. W2000–02826–COA–R3–CV, 2001 WL 912824 (Tenn.Ct. App. Aug. 6, 2001). Defendants, in fact, do not contest this. It thus follows that jurisdiction does not exist in this case on the basis of a substantial federal question. That, then, leaves for consideration the question of complete preemption, another

---

cause of action through complete pre-emption.

The question is ultimately of no consequence in this case, however, since the court concludes there is no substantial federal question in any event.

**5.** *See infra* at pp. 634–36.

exception, or "corollary" to the well-pleaded complaint rule.[6]

█ It has been recognized that there is "an exception to the well-pleaded complaint rule for those few statutes whose 'preemptive force ... is so powerful as to displace entirely any state causes of action.'" *Roark v. Humana, Inc.*, 307 F.3d 298, 305 (5th Cir.2002) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Under this complete preemption exception,

> [w]here "a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Such actions are excepted from the well-pleaded complaint rule and confer original and removal jurisdiction.

*Roark*, 307 F.3d at 305 (citations omitted). *See also Beneficial Nat'l Bank*, 123 S.Ct. at 2062 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."); *Heimann*, 187 F.3d at 499 ("A corollary to the well-pleaded complaint doctrine 'is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'") (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

Addressing this exception in *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir.2000), the Fifth Circuit took care to point out that " 'complete preemption,' which creates federal removal jurisdic-

tion," is a "narrow exception" to the well-pleaded complaint rule, "and differs from more common 'ordinary preemption' (also known as 'conflict preemption'), which does not," so that only in the case of complete preemption does a claim, asserted as a state law claim, lose its state character. The court explained:

> Ordinarily, the term federal preemption refers to ordinary preemption, which is a federal defense to the plaintiff's suit and may arise either by express statutory term or by a direct conflict between the operation of federal and state law. Being a defense, it does not appear on the face of a well-pleaded complaint, and, thus, does not authorize removal to a federal court. By way of contrast, complete preemption is jurisdictional in nature rather than an affirmative defense to a claim under state law. As such, it authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims for relief or if the federal issue is initially raised solely as a defense.

*Id.* (quoting *Heimann*, 187 F.3d at 500); *see also River Parishes, Inc. v. Aetna U.S. Healthcare, Inc.*, No. CIV. A. 00–3380, 2001 WL 277938, *3 (E.D.La.2001) ("Complete preemption provides removal jurisdiction whereas conflict preemption does not.").

█ Generally speaking, for there to be complete preemption, the court must find that Congress has "so completely preempted a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 59, 107 S.Ct. 1542, 1544, 95

---

**6.** As indicated in note 4, *supra,* removal is proper, even in the absence of complete preemption, "when Congress expressly so provides." *Beneficial National Bank,* 123 S.Ct.

at 2062. There is no Congressional provision for removal of claims under FOTETA or its implementing regulations.

L.Ed.2d 55 (1987). Addressing the complete preemption doctrine, the Supreme Court in *Beneficial National Bank* explained that in those few categories of cases where it has found complete preemption, "the federal statutes at issue ... provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." 123 S.Ct. at 2059–2060.[7] The Court thus explained that if the federal act in question provides the exclusive cause of action for the claims asserted in plaintiff's complaint, "then the cause of action necessarily arises under federal law and the case is removable. If not, then the complaint does not arise under federal law and is not removable." *Id.*[8]

■■■ Turning to the federal statute and regulations under consideration, there is no question but that the FOTETA has some preemptive force, given its express preemption provision:

A state or local government may not prescribe or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this section. However, a regulation prescribed under this section may not be construed to preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property.

49 U.S.C. § 31306(g). The regulations implementing FOTETA also include preemption language:[9]

(a) Except as provided in paragraph (b) of this section, this part preempts any State or local law, rule, regulation, or order to the extent that:

(1) Compliance with both the State or local requirement in this part is not possible; or

(2) Compliance with the State or local requirement is an obstacle to the accomplishment and execution of any requirement in this part.

(b) This part shall not be construed to preempt provisions of State criminal law that impose sanctions for reckless conduct leading to actual loss of life, injury, or damage to property, whether the provisions apply specifically to transportation employees, employers, or the general public.

49 C.F.R. § 382.109. However, the question is whether the Act works to *completely* preempt plaintiff's state law claims. Here, defendants submit that it does, because to the extent plaintiff is claiming that defendants' procedures did not comply with the requirements prescribed by FOTETA, i.e., to the extent he is alleging a violation of FOTETA as a basis for his negligence claims, then state law, to the

---

7. *See also City of Boston v. Smith & Wesson Corp.*, 66 F.Supp.2d 246, 249 (D.Mass.1999) (stating, "Those few instances in which a court has decided in favor of a claim of complete preemption have involved comprehensive statutory schemes outlining rights and specific procedures for relief.").

8. In *Heimann*, the Fifth Circuit held, similarly, that to establish complete preemption, the proponent of federal jurisdiction must show that

(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous

area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.
187 F.3d at 500 (citing *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157 (5th Cir. 1989)).

9. Federal regulations have the same pre-emptive effect as federal statutes. *City of New York v. F.C.C.*, 486 U.S. 57, 63, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988).

extent it would allow recovery, is inconsistent with FOTETA and hence preempted.

In *Beneficial National Bank*, the issue was whether the plaintiffs' claim against the defendant bank for usury was preempted by the National Bank Act. The Court explained that § 85 of the Act set forth substantive limits on rates of interest that national banks may change, while § 86 set forth the elements of a usury claim against a national bank. The Court stated that if, as the bank claimed, the interest rate it charged did not violate § 85 limits, then the statute "unquestionably preempts any common-law or Alabama statutory rule that would treat those rates as usurious." 123 S.Ct. at 2063. That is,

> [t]he section would therefore provide the petitioners with a complete federal defense. *Such a defense, however, would not justify removal. Only if Congress intended § 86 to provide the exclusive cause of action for usury claims against national banks would the statute be comparable to the provisions that we construed in the Avco and Metropolitan Life cases.* (Emphasis added).

*Id.; see also id.* at 2064 n. 5 (noting that "proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable").[10] Then, recognizing that the National Bank Act had long been construed as providing "an exclusive federal cause of action for usury against national banks," *id.* at 2064, the Court concluded that §§ 85 and 86 had "the requisite preemptive force to provide removal jurisdiction" so that there could be "no such thing as a state-law claim of usury against a national bank," *id.*

Neither FOTETA, nor its implementing regulations, provides a federal cause of action in favor of an employee in plaintiff's position. FOTETA and the regulations mandate suspension of those operators who have driven a commercial motor vehicle while under the influence of drugs,[11]

10. *See also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23–24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (*"Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."); *Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 311 (3d Cir.1994) ("complete preemption" applies only to situations where "the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls" and there is "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law."); *Sandoval v. New Mexico Technology Group LLC*, 174 F.Supp.2d 1224, 1233 (D.N.M.2001) (concluding that sections 7 and 8 of the NLRA "cannot 'completely preempt' Plaintiff's state law claims because they do not provide the Plaintiff with a comparable federal cause of action which Plaintiff could have originally prosecuted in this Court"); *Hendricks v. Dynegy Power Mktg.,*

*Inc.*, 160 F.Supp.2d 1155, 1158–59 (S.D.Cal. 2001) (stating that "[t]he distinguishing factor between these two preemption doctrines is the existence of federal jurisdiction in the first instance. If Congress preempts state law claims and provides a federal cause of action, then original federal jurisdiction may properly be said to exist. However, if Congress preempts state law claims but does not provide a federal cause of action, then Plaintiffs' complaint could not have been brought in federal court and removal jurisdiction will not lie."); *City of Boston v. Smith & Wesson Corp.*, 66 F.Supp.2d 246, 249–50 (D.Mass. 1999) ("To determine that an area has been completely preempted for purposes of federal-question jurisdiction, a United States district court must determine that Congress expressly manifested an intent to displace state claims in favor of an alternative federal claim.").

11. *See* 49 U.S.C. § 31310(b)(1)(A) (requiring suspension of at least one year for a first offense); § 31310(c)(2) (requiring suspension of at least 10 years for a second offense).

and DOT's implementing regulations set forth civil sanctions applicable to those who test positive for illegal drugs,[12] as well as civil and/or criminal penalties for any employer or driver who violates the requirements of 49 C.F.R. Part 40.[13] But the Act provides no substantive protections for those employees who claim to have been aggrieved through the drug testing process. *See Parry*, 236 F.3d at 308–09 ("FOTETA is framed as a general mandate to the Department of Transportation as the regulations promulgated under part 40 are applicable to the Federal Highway Administration, Federal Railroad Administration, Federal Transit Administration and Federal Aviation Administration. [Its] regulatory scheme does not evince a concern for the protection of drivers who believe that they have been aggrieved through the drug testing process."); *Santiago v. Greyhound Lines, Inc.*, 956 F.Supp. 144, 152 (N.D.N.Y.1997) (observing that "the Testing Act does not provide . . . substantive protections for employees

injured by improper testing. . . . There is no express provision for an employee civil action. . . The only sanctions mentioned are those that can be taken against transportation workers testing positive."). The Act does contain a provision which allows an employee claiming his urine was incorrectly tested to initiate an administrative proceeding before the Assistant Administrator of the Federal Motor Carrier Safety Act; but the Act does not provide employees a right to pursue a claim for relief but rather merely grants the Assistant Administrator the authority to investigate alleged violations and "to compel compliance with the statute or regulation, assess a civil penalty or both." 49 C.F.R. § 386.1.

As there is no federal cause of action or remedy to supplant plaintiff's state law claims, nor, for that matter, any indication that the administrative avenue for review of an employer's actions under the Act is intended to be exclusive, complete preemption does not apply.[14] *Cf. Sandoval v. New*

---

**12.** 49 C.F.R. § 382.605 (1999). *See* 49 C.F.R. § 382.507 (entitled "Penalties," which states, "Any employer or driver who violates the requirements of this part shall be subject to the civil and/or criminal penalty provisions of 49 U.S.C. 521(b)").

**13.** *See* 49 U.S.C. § 521(b)(2)("Civil penalty.—A) In general.—Except as otherwise provided in this subsection, any person who is determined by the Secretary, after notice and opportunity for a hearing, to have committed an act that is a violation of regulations issued by the Secretary under subchapter III of chapter 311 (except sections 31138 and 31139) or section 31502 of this title shall be liable to the United States for a civil penalty in an amount not to exceed $10,000 for each offense. Notwithstanding any other provision of this section (except subparagraph (C), no civil penalty shall be assessed under this section against an employee for a violation in an amount exceeding $2,500."); *see also* § 521(b)(6) ("Criminal penalties.—(A) In general.—Any person who knowingly and willfully violates any provision of subchapter III of chapter 311 (except sections 31138 and 31139) or section

31502 of this title, or a regulation issued under any of those provisions shall, upon conviction, be subject for each offense to a fine not to exceed $25,000 or imprisonment for a term not to exceed one year, or both, except that, if such violator is an employee, the violator shall only be subject to penalty if, while operating a commercial motor vehicle, the violator's activities have led or could have led to death or serious injury, in which case the violator shall be subject, upon conviction, to a fine not to exceed $2,500.").

**14.** In *Rector v. LabOne, Inc.*, 208 F.Supp.2d 987, 989 (E.D.Ark.2002), the court concluded that there was removal jurisdiction based on preemption by FOTETA of the plaintiff's putative state law claims for negligence in handling of his urine specimen. However, in analyzing the issue, the court made no mention of complete preemption or effort to distinguish ordinary preemption from complete preemption, and did not account for the fact that while the latter will support removal, the former will not. Accordingly, while the court would agree with the *Rector* court's conclu-

*Mexico Technology Group LLC*, 174 F.Supp.2d 1224, 1234–35 (D.N.M.2001) (finding there was no subject matter jurisdiction where federal statute at issue "neither explicitly nor implicitly authorizes a private cause of action" and where "the Secretary of Labor, and not the courts, [has] exclusive jurisdiction to enforce that Act"). It follows, then, that defendants' removal was improvident, and that remand is in order.

Accordingly, it is ordered that plaintiffs' motion to remand is granted.

sion that FOTETA has a preemptive effect, this court does not view *Rector* as persuasive authority on the question of complete preemption.

The court would further note that while the Fifth Circuit found in *Frank v. Delta Airlines, Inc.*, 314 F.3d 195 (5th Cir.2002), that FOTE-TA and the FAA's implementing regulations under FOTETA preempted the plaintiff's state law claims, the court was not considering the question of complete preemption for purposes of removal jurisdiction. Accordingly, the court's analysis in *Frank* is not particularly pertinent here.