FILED
United States Court of Appeals
Tenth Circuit

June 4, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLYDE WILLIAMS,

      Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE, INC.,

      Defendant-Appellee.

No. 07-6035

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 06-CV-210-C)**

---

Jan Preece Gaddis, Duncan, Oklahoma, for Plaintiff-Appellant.

Christine E. Reinhard, Akin Gump Strauss Hauer & Feld, LLP, San Antonio, Texas (Shannon B. Schmoyer, Akin Gump Strauss Hauer & Feld, LLP, San Antonio, Texas; Shannon K. Emmons and Douglas M. Todd, Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, Oklahoma, with her on the briefs), for Defendant-Appellee.

---

Before **TACHA**, **EBEL** and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

      This case requires us to determine the boundary between state statutes that regulate employee drug testing, such as Oklahoma's Standards for Workplace

Drug and Alcohol Testing Act ("ODTA"), and federal statutes that mandate drug testing of certain employees. Oklahoma's drug testing statute exempts from its procedural standards "[d]rug or alcohol testing required by and conducted pursuant to federal law." Okla. Stat. tit. 40, § 553(C). We must determine whether the drug test conducted on Clyde Williams, a feeder driver for United Parcel Services, Inc., falls within the scope of this exemption, thereby extinguishing his state law claim for violations of the drug testing procedure under Oklahoma law. We conclude that it does.

## I. The Legal Framework of Drug Testing

The development of fast and inexpensive urinalysis tests to detect drug use prompted the spread of employee drug testing throughout the nation in the early 1980s. Employee drug use was estimated to result in productivity losses by U.S. businesses of around $26 billion per year. H.J. Harwood, et al., *Economic Costs to Society of Alcohol and Drug Abuse and Mental Illness*: 1980 (Research Triangle Institute, June 1984).[1] In 1986, President Reagan issued Executive Order 12564, the Drug Free Workplace Program, requiring periodic as well as reasonable-suspicion and post-accident drug testing of federal employees in certain sensitive positions. Exec. Order No. 12564, 51 Fed. Reg. 32889 (Sept. 15, 1986). Department of Transportation ("DOT") regulations issued in 1988 and

---

[1]The accuracy of these statistics has since been questioned. *See* National Academy of Sciences, *Under the Influence? Drugs and the American Workforce* (Jacques Normand, et al. eds., 1994).

those issued under the authority of the Omnibus Transportation Employee Testing Act of 1991, 49 U.S.C. § 5331, require drug and alcohol testing of employees in "safety-sensitive" positions in the aviation, trucking, mass-transit, pipeline, and other transportation industries. 49 C.F.R. §§ 391.81 et seq.; *id.* §§ 382.101 et seq.; *id.* §§ 392.1 et seq.; *id.* §§ 40.01 et seq; Department of Transportation Drug Testing Regulations for the Motor Carrier Industry, Procedures for Transportation Workplace Drug Testing Programs, 53 Fed. Reg. 47002 et seq. (Nov. 21, 1988). These federally mandated drug tests are subject to procedural requirements intended to "protect individual privacy, ensure accountability and integrity of specimens, require confirmation of all positive screening tests, mandate the use of laboratories operating within [certain] guidelines . . ., provide confidentiality for test results and medical histories, and ensure nondiscriminatory testing methods." FHWA Controlled Substances Testing, Policy Statement, 53 Fed. Reg. 47134, 47135. The procedural regulations are enforced by administrative remedies in the form of civil and criminal penalties. 49 U.S.C. § 521; 49 C.F.R. § 382.507. There is no private cause of action available to aggrieved employees for a violation of the procedural protections. *See Schmeling v. NORDAM*, 97 F.3d 1336, 1344–45 (10th Cir. 1996).

Many private companies also implemented drug testing of employees, even though not required to do so by federal law. By 1991, half of the Fortune 1000 firms had adopted some type of employee drug testing policy. Royer F. Cook, et.

al, *Drug Assessment Methods in the Workplace*, *in* Drug Testing Technology 255, 257 (Tom Mieczkowski ed., 1999). Through such policies, employers sought to combat workplace problems connected with drug use, including absenteeism, theft, accidents, diminished productivity, liability, and increased health care costs. 53 Fed. Reg. 47134. However, outside of federally regulated industries in which drug testing is mandated by law, drug testing by private employers is not subject to the procedural protections imposed on drug testing in the federal sector. The lack of procedural standards prompted concerns about employee privacy, procedural errors resulting in false positives, and confidentiality in the reporting of positive results. To address these concerns, many states adopted statutes that impose procedural regulations on employee drug tests conducted by private employers. To date, twenty-three states have adopted such measures.[2]

Oklahoma enacted its Standards for Workplace Drug and Alcohol Testing Act in 1993. Although the procedural requirements imposed by the ODTA are similar in most respects to those already in place under DOT regulations, there

---

[2] Ala. Code § 25-5-330 *et seq*.; Alaska Stat. § 23.10.600 *et seq*.; Ariz. Rev. Stat. § 23-493 *et seq*.; Conn. Gen. Stat. § 31-51t *et seq*.; Fla. Stat. § 440.101 *et seq*.; Haw. Rev. Stat. § 329B-1 *et seq*.; Idaho Code Ann. § 72-1701 *et seq*.; Iowa Code Ann. § 730.5; La. Rev. Stat. Ann. § 49:1001 *et seq*.; Me. Rev. Stat. Ann. tit. 26 § 681 *et seq*.; Md. Code Ann. Health–Gen. § 17-214; Minn. Stat. § 181.950 *et seq*.; Miss. Code Ann. § 71-7-1 *et seq*.; Mont. Code Ann. § 39-2-205; Neb. Rev. Stat. § 48-1901 *et seq*.; N.C. Gen. Stat. § 95-230 *et seq*.; Ohio Admin. Code § 4123-17-58; Okla. Stat. tit. 40, §§ 551–65, Or. Rev. Stat. § 438.435 *et seq*.; R.I. Gen. Laws § 28-6.5-1 *et seq*.; S.C. Code Ann. § 38-73-500; Utah Code Ann. § 34-38-1 *et seq*.; Vt. Stat. Ann. tit. 21, § 511 *et seq*.

are some substantial practical differences. The ODTA requires the laboratories that process drug tests to be licensed by the Oklahoma State Department of Health, Okla. Stat. tit. 40, § 558, and requires that samples be collected and tested by individuals deemed qualified by the Oklahoma State Board of Health. *Id.* § 559. Employers who require drug testing must offer an employee assistance program to provide referral services for substance abuse counseling, treatment, or rehabilitation. *Id.* § 561. No such program is required by the DOT regulations. Under the ODTA, employers must pay for both primary and confirmation testing, *id.* § 556, while the DOT regulations do not specify who must pay for testing, except that direct employee payment cannot be a condition for receiving a split-specimen test. 49 C.F.R. § 40.173. Most significantly, unlike federal law, the ODTA provides a private cause of action to aggrieved employees for "willful" violations of the Act. Okla. Stat. tit. 40, § 563.

The question posed in this case is whether an employee aggrieved by his employer's federally-mandated drug test may sue under state law for violations of these procedural protections.

## II. Facts and Procedural History

In the wee hours of February 9, 2004, Appellant Clyde Williams, a driver for Appellee United Parcel Services, Inc. ("UPS"), swerved onto the shoulder of the highway on his route from Lawton, Oklahoma to Oklahoma City. The soft shoulder caused the two trailers being pulled by his truck to overturn. Mr.

Williams was not issued a citation by the Oklahoma Highway Patrol, but UPS supervisors required him to submit to a urinalysis drug test based on "reasonable cause" to believe that he had used drugs in violation of the UPS employee policy. According to a drug testing form filled out approximately two and a half hours after the accident, the basis for the supervisors' suspicion was Mr. Williams' "Redness of Eyes." Mr. Williams submitted a specimen for drug testing later that morning. After both his initial and split-sample tests returned positive, UPS terminated him.

Mr. Williams brought suit under the ODTA in the District Court for Comanche County, Oklahoma, claiming that UPS had violated procedural requirements under the Act. He sought reinstatement, back pay, and lost benefit payments—which are available remedies under state law, though not available under federal law. UPS removed the case to the United States District Court for the Western District of Oklahoma based on diversity jurisdiction. UPS then filed a motion to dismiss, or in the alternative a motion for summary judgment, citing Okla. Stat. tit. 40, § 553(C), which explicitly exempts drug tests "required by" and conducted "pursuant to" federal law from the provisions of the ODTA. UPS contended that the drug test conducted on Mr. Williams was required by and complied with the DOT regulations governing drug testing of commercial truck drivers, promulgated under authority of the Federal Omnibus Transportation Employee Testing Act of 1991. The district court initially denied UPS's motion,

but upon the submission of additional evidence by UPS showing compliance with the applicable DOT regulations, held that Mr. Williams' drug test fell within the statutory exemption provided by § 553(C). Mr. Williams appeals the grant of summary judgment for UPS.

We affirm, although we do not decide whether Mr. Williams' test complied with DOT regulations. Rather, we hold that § 553(C) categorically exempts those drug tests that are mandated by federal law and subject to procedural regulations imposed by the DOT, whether or not the employer fully complied with those regulations.

### III. Analysis

The boundary between conflicting state and federal law is ordinarily resolved by reference to federal preemption principles, which derive from the Supremacy Clause of the United States Constitution, U.S. Const., Art. VI. The DOT regulations contain an express preemption provision: "this part preempts any State or local law . . . to the extent that: (1) Compliance with both the State or local requirement in this part is not possible; or (2) Compliance with the State or local requirement is an obstacle to the accomplishment and execution of any requirement in this part." 49 C.F.R. § 382.109. Because "[f]ederal regulations have no less preemptive effect than federal statutes," *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982), we would ordinarily look to this regulation as the measure of preemption. Here, however, the state law contains

-7-

what might be called a self-preemption provision, which carves out a sphere of exclusive federal authority from its scope of application, and thus reduces or eliminates conflict with federal law. Section 553(C) of the ODTA states that "[d]rug or alcohol testing required by and conducted pursuant to federal law or regulation shall be exempt from the provisions of [this Act]." Okla. Stat. tit. 40, § 553(C). UPS has focused its argument for summary judgment on this provision rather than federal preemption. The question of federal preemption would arise only if state law applied by its own terms to this situation.

To fall within § 553(C), a drug test must both be "required by" and conducted "pursuant to" federal law. These are separate and distinct requirements; the satisfaction of one does not necessarily satisfy the other. On summary judgment, the burden is on UPS to show, when construing the facts in the light most favorable to Mr. Williams, that both elements have been met. *Casey v. City of Federal Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007). However, Mr. Williams has conceded that his drug test was required by the DOT regulations,[3] and therefore we restrict our analysis to determining whether his test was conducted "pursuant to" federal law.

_____

[3] Mr. Williams did not argue below that his drug test was not required by federal law based on reasonable suspicion that he had used drugs. *Williams v. United Parcel Service, Inc.*, 2006 WL 2472896, *6 (W.D. Okla. Aug. 23, 2006). In this Court, he explicitly concedes the issue: "Williams' drug test was required by federal law or regulation, but it was not 'conducted pursuant to federal law or regulation.'" Opening Brief, at 24 (quoting Okla. Stat. tit. 40 § 553(C)).

As our jurisdiction is based on diversity of citizenship and we are construing an Oklahoma statute, we must give it the meaning it would have in the Oklahoma courts. *Erie R.R. v. Tompkins*, 304 U.S. 64, 77–78 (1938); *United States v. DeGasso*, 369 F.3d 1139, 1145–46 (10th Cir. 2004); *Mem'l Hosp. of Laramie County v. Healthcare Realty Trust Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007). Unfortunately, there are no reported decisions of the Oklahoma Supreme Court, or of lower courts in Oklahoma, interpreting § 553(C). We must therefore attempt to predict the interpretation that would be given the statute by the Oklahoma courts, based on its language, on the decisions of other state appellate courts, and on the evident purposes of the statute. *DeGasso*, 369 F.3d at 1145–46. As the Oklahoma Supreme Court has stated: "Fundamental to statutory construction is to ascertain and give effect to legislative intent." *Humphries v. Lewis*, 67 P.3d 333, 335 (Okla. 2003). "Ambiguous text can . . . be decoded by knowing the purpose behind the statute." *In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir. 2002).[4]

## A. Possible Interpretations of the Language of § 553(C)

Unfortunately, and contrary to the district court's confident determination, *see Williams*, 2006 WL 2472896, at *5, we find the meaning of "pursuant to" in § 553(C) anything but plain. Black's Law Dictionary defines "pursuant to" as

---

[4]Neither party has requested that we certify this question to the Oklahoma Supreme Court, and in view of the federal interest in its resolution, we do not elect to do so on our own motion.

either "[i]n compliance with" or "[a]s authorized by; under." (8th ed. 2004). These definitions suggest two contrasting interpretations of the phrase "pursuant to federal law."

The first interpretation, adopted by the district court, is that "pursuant to" requires full compliance with the applicable federal regulations. *See Williams*, 2006 WL 2472896, at *4 ("The Oklahoma legislature clearly intended for all Regulation-mandated procedures [to] be followed before § 533(C) barred a plaintiff's suit under the Act."). Under this interpretation, a drug test that does not comply with every federal procedural standard has not been conducted "pursuant to" federal law. Appellant's Brief 28. Accordingly, when a federally-mandated drug test fails to conform in every detail to federal requirements, it becomes subject to Oklahoma's own procedural requirements, and employees have a private right of action for damages, back pay, and reinstatement for violations.[5]

The alternative interpretation is that drug tests conducted "pursuant to" federal law are those conducted "under" federal law, in the sense that federal procedural regulations govern how the tests must be performed. Federal law not only authorizes the drug test, but provides the standards under which it must be

---

[5] UPS argues that even if the district court's interpretation of § 553(C) is correct, applicability of federal law should be measured by a "substantial compliance" standard rather than a "full compliance" standard. We need not reach that argument.

-10-

carried out.  Under this interpretation, if a drug test is mandated and governed by federal law, Oklahoma law is inapplicable by its own terms.  Noncompliance with the federal standards does not trigger the application of state law and state remedies.  Rather, questions of compliance with federal standards and of sanctions for noncompliance are determined solely by federal regulation.

Given the linguistic plausibility of either definition, we must consult sources beyond the text of the statute.

## B. Similar State Statutes

At least ten other states have adopted self-preemption provisions similar to that in the ODTA.[6]  In *Belde v. Ferguson Enterprises, Inc.*, 460 F.3d 976 (8th Cir. 2002), the Eighth Circuit, exercising diversity jurisdiction, interpreted a parallel Minnesota provision, Minn. Stat. Ann. § 221.031.  The court held that the employer was exempted from the Minnesota drug testing statute because the employer was "required to comply with the mandatory federal testing requirements of 49 C.F.R. Part 382, and [did] comply."  *Belde*, 460 F.3d at 978.  Similarly, in *Welcher v. American Ordnance, L.L.C.*, 711 N.W.2d 732, *2 (Iowa Ct. App. Jan. 19, 2006) (unpublished), an Iowa appellate court held that a drug test was exempt from Iowa's drug testing statute, Iowa Code Ann. § 730.5,

---

[6]Alaska Stat. § 23.10.670; Ariz. Rev. Stat. § 23-493.11; Fla. Stat. § 112.0455; Iowa Code Ann. § 730.5; La. Rev. Stat. Ann. § 49:1001; Me Rev. Stat. Ann. tit. 26 § 681; Minn. Stat. § 181.957; Miss. Code Ann. § 71-7-29; N.C. Gen. Stat. § 95-235; R.I. Gen. Laws § 28-6.5-1.

because it was conducted on an employee required to be tested under federal regulations. We are aware of no appellate decision interpreting such a state drug testing statute as applying state requirements or state remedies to a federally-mandated drug test conducted under federal standards.

Other state statutes appear on their face to provide similar exemptions for federally regulated drug tests so as to avoid conflict with federal law. Louisiana and North Carolina exempt all drug tests that are required by federal law. La. Rev. Stat. Ann. § 49:1001; N.C. Gen. Stat. § 95-235. Florida and Maine exempt all drug tests on employees subject to testing required by federal law, which has the effect of excluding all testing conducted on employees in safety sensitive positions in the transportation industry or other industries in which the federal government mandates and regulates drug testing. Fla. Stat. § 112.0455**;** Me. Rev. Stat. Ann. tit. 26 § 681**.** Mississippi exempts all employers with any employees who are subject to federally mandated testing. Miss. Code Ann. § 71-7-29. Only Alaska and Arizona have adopted drug testing laws that appear to require actual compliance with applicable federal regulations for a drug test to be exempt from state procedures. Alaska Stat. § 23.10.670; Ariz. Rev. Stat. § 23-493.11. Rhode Island's self-preemption provision includes the ambiguous "pursuant to" language that we face here. R.I. Gen. Laws § 28-6.5-1. So far as we can tell, these provisions have not received judicial interpretation, or federal preemption challenge.

## C. Statutory Purpose

We turn next to statutory purpose, which Oklahoma courts regard as central to the determination of statutory meaning where the legal text is ambiguous. *Humphries*, 67 P.3d at 335; *see McNeill v. City of Tulsa*, 953 P.2d 329, 332 (Okla. 1998) ("The subject matter and purpose of a statute are material to ascertaining the meaning of a word or phrase used and that language should be construed to be harmonious with the purpose of the act."). The parties have not cited any legislative history; nor have we found any sources that would provide direct evidence of legislative intent. Nevertheless, the purpose of the self-preemption provision is evident from its language and context: it is intended to eliminate overlap of state and federal law, which gives both employers and employees advance notice as to which rules will apply to a particular drug test and prevents conflicting commands. It may also have been the Oklahoma legislature's intention to render federal preemption unnecessary. Similar objectives are evident in other states' self-preemption provisions, most of which exempt all or nearly all federal drug tests to avoid potential conflict and in deference to federal supremacy. These purposes point strongly in favor of interpreting the term "pursuant to" in § 533(C) as meaning mandated and governed by federal law.

First, only under this interpretation can employers and employees know in advance which set of rules—state or federal—apply to a drug test. If "pursuant to" is interpreted to mean "in compliance with," no one could know which set of

rules are applicable until after the fact. The drug testing process must be complete to determine whether it was conducted in full (or even substantial) compliance with the federal requirements. For example, in this case, the employee contends (among other things) that he did not receive proper notice of the results of the first drug test. Obviously, this alleged procedural defect could not have been known until after the testing and notifying had been done.

Second, an employer who knows in advance which rules apply to a drug test can plan a cost-effective means to comply with the law without concern that there may be a surprise addition to the procedural requirements later in the game. But if an employer subject to federal drug testing procedures cannot discover whether state law applies until after the test is completed, the employer must comply with both sets of mandates (assuming they are not so inconsistent as to make this impossible) to be sure that it will not be hit with penalties for willful violations. For an interstate carrier, this may require compliance with a different set of rules in each jurisdiction in which the carrier operates, in addition to federal compliance. For example, Oklahoma law requires that testing be done by Oklahoma-licenced laboratories. Ordinarily, an interstate carrier subject to federal testing requirements would be free to use a single laboratory for all of its drug testing regardless of where the samples are collected. If the "compliance" interpretation of § 533(C) is adopted, however, a prudent interstate carrier would be wise to send its urine samples to an Oklahoma-licensed laboratory whenever

-14-

the testing occurred in Oklahoma—and comply with the varieties of state law in each of the other states in which it operates—because a slip-up under the federal rules would bring the state rules into play. That the Oklahoma legislature intended such confusion and unnecessary expense seems unlikely. *See French v. Pan Am Exp., Inc.*, 869 F.2d 1, 6 (1st Cir. 1989) ("It is simply unreasonable to hypothesize that Congress intended a commercial pilot on a Providence-to-Baltimore-to-Miami run to be subject to drug testing, say, in Maryland, but not Rhode Island or in Florida.").

Third, the "compliance" interpretation would lead to the anomalous result that an employer that commits one violation under federal law would be subject to penalties for an entirely different set of violations under state law. If, for example, the employer failed to provide prompt notice of the results of the first test (a violation of federal rules), it would be subject to penalties for violating the full panoply of state laws, to which it would not otherwise have been subject. A single mistake, whether unintentional or even unavoidable, retroactively subjects the entire testing process to a different set of rules. "Retroactivity is generally disfavored in the law, in accordance with 'fundamental notions of justice.'" *Eastern Enterprises v. Apfel*, 524 U.S. 498, 532 (1998) (quoting *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990)).

Fourth, the "compliance" interpretation has the odd consequence of making state juries (or federal juries, in diversity cases) the arbiters of compliance with

-15-

complex federal regulations, despite Congress's decision to employ administrative oversight. The first question in any ODTA case involving federally-mandated drug testing would be whether the federally-mandated test complied with federal rules; this presumably would be a question for the jury, as it would have been here if the district judge had not granted UPS's motion for summary judgment. Yet Congress vested the administrative agency with authority to apply and enforce these federal rules, rather than creating a private cause of action. Although we need not decide here whether state remedies for violations of federal regulations would be federally preempted, *see Drake v. Lab. Corp. of American Holdings*, 458 F.3d 48 (2d Cir. 2006), it would be ironic to interpret a provision of state law designed to avoid conflict with federal law as empowering state juries to make decisions entrusted by Congress to federal regulatory agencies.

We doubt seriously that the Oklahoma legislature could have intended these results: to make it impossible for employers and employees to know which rules will apply in advance of testing, to require prudent interstate carriers to comply with a patchwork of local laws, to penalize employers who commit one violation for a host of others, and to transfer authority over determining compliance with federal regulations from federal agencies to state juries. Each of these outcomes undermines the evident purpose of § 533(C), which is to minimize duplicate regulations and conflict with congressional objectives. Such an interpretation would also increase the risk that the ODTA would be preempted by federal law.

*See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (finding preemption where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress".).

Appellant argues strenuously against this interpretation because federal law does not provide a private cause of action. Appellant's Br. 27–28. But this is nothing more than a disagreement with Congress's choice of remedies for violation of federal requirements. Congress, in its wisdom, has chosen to rely on civil and criminal penalties for violations of federal drug testing regulations. We need not decide here whether the Oklahoma legislature might supplement these federal remedies because it has not chosen to do so.[7]

## IV Conclusion

We conclude that the phrase "conducted pursuant to federal law" as used in the exemption provision of the ODTA describes those drug tests mandated and governed by federal law. It is undisputed that Mr. Williams' drug test was required by federal law, and there is no doubt that it was subject to DOT regulations. Therefore, the test was conducted "pursuant to" federal law and Mr. Williams is without a cause of action under the ODTA.

We therefore **AFFIRM** the district court's grant of summary judgment in favor of UPS.

---

[7] We express no view regarding whether Mr. Williams may seek relief through arbitration on the basis of his employment agreement with UPS.