**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3728
_____

SHIRLEY FREEMAN,
                                    Appellant

v.

MIDDLE TOWNSHIP BOARD OF EDUCATION; MICHAEL J. KOPAKOWSKI,
Individually and as agent, servant and employee of Middle Township Board of
Education; WALTER F. LANDGRAF, Individually and as agent, servant and employee
of Middle Township Board of Education; LISA HULME, Individually and as agent,
servant and employee of Middle Township Board of Education; LIFE CARE MEDICAL;
QUEST DIAGNOSTICS, INC.; MARY JO QUIGLEY, Agent, Servant, and employee of
Life Care Medical and Quest Diagnostic; LEONARD KRAUS
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:10-cv-06024)
District Judge:  Honorable Renée Marie Bumb
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 13, 2013
Before:  SCIRICA, JORDAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: June 28, 2013)
_____

OPINION
_____

PER CURIAM

Shirley Freeman, a school bus driver in Middle Township, New Jersey, accused the defendants of violating her rights in connection with a random workplace drug and alcohol test.[1] Freeman's refusal to take the test led ultimately to her termination. Before final disposition, defendants Krauss, Quigley, Life Care Medical, and Hulme were voluntarily dismissed from the action. The remaining defendants moved for summary judgment, which the District Court granted in their favor. See generally Freeman v. Middle Twp. Bd. of Educ., No. 10-CV-6024, 2012 WL 3715925 (D.N.J. Aug. 27, 2012). Although Freeman had representation in the District Court, she now appeals its disposition pro se. We have jurisdiction pursuant to 28 U.S.C. § 1291 and conduct plenary review. See Rescigno v. Walters, 773 F.2d 47, 47 (3d Cir. 1985) (per curiam).

We must first determine which issues are properly before us. We "generally refuse to consider issues that are raised for the first time on appeal." Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir. 1976). Also, appellants are generally required to raise in their opening briefs (not their reply briefs) the matters they wish to dispute. See, e.g., Ethypharm S.A. Fr. v. Abbott Labs., 707 F.3d 223, 231 n.13 (3d Cir. 2013) (explaining that issues not so raised may be considered waived). These rules, while important, are not inflexible. Pro se parties are afforded liberal construction of their submissions and pleadings, "[a]nd at least on one occasion, we have refused to apply the doctrine of appellate waiver when dealing with a pro se litigant." Mala v.

---

[1] We write primarily for the parties and will assume their familiarity with the underlying

2

<u>Crown Bay Marina, Inc.</u>, 704 F.3d 239, 244 (3d Cir. 2013) (citing <u>Tabron v. Grace</u>, 6 F.3d 147, 153 n.2 (3d Cir. 1993)).  <u>But see</u> <u>Timson v. Sampson</u>, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) ("[I]ssues not briefed on appeal by a *pro se* litigant are deemed abandoned . . . .  Moreover, we do not address arguments raised for the first time in a *pro se* litigant's reply brief.").

Having established our framework of review, we turn to Freeman's opening informal brief, which she has divided into several "Points."  In points one through three, she argues that Middle Township and its entities are not "employers" operating in "commerce," and are thus not governed by certain United States Department of Transportation (DOT) regulations, including those (such as the drug-testing regulation, 49 C.F.R. § 382.305) promulgated in the wake of the Omnibus Transportation Employee Testing Act of 1991.  <u>See</u> <u>Williams v. United Parcel Serv., Inc.</u>, 527 F.3d 1135, 1137 (10th Cir. 2008) (discussing the background of employee drug testing); <u>see also</u> <u>Anderson v. Indep. Sch. Dist.</u>, 357 F.3d 806, 807–08 (8th Cir. 2004).  In point four, Freeman insists that the District Court "erred by dismissing the . . . past random drug and alcohol testing" because those tests were administered during off-duty hours and without cause, resulting in an illegal search and seizure under the Fourth Amendment.  In point five, she objects to the dismissal of certain defendants, while averring that the Life Care Medical lab was not "certified" in compliance with federal regulations.  And in point six,

---

facts.

Freeman suggests that the District Court erred by considering Kopakowski's testimony, because "accepting [his] recommendation" to enroll in an employee assistance program (EAP) and take another drug test would have led Freeman to further violate the law. Finally, Freeman identifies certain facts that were incorrectly decided by the District Court, although her arguments overlap with the complaints identified above.

Several of Freeman's issues either were not raised below or are irrelevant to matters currently on appeal. Her regulatory argument in points one through three is a marked departure from the case presented to the District Court—which relied, in part, on arguing that the defendants' conduct violated applicable federal regulations. Thus, because the regulatory issue was not raised below, we decline to reach it.[2] And in point five, Freeman objects to the dismissal of certain parties, failing to mention that she voluntarily consented to those dismissals.

---

[2] Among Freeman's allegations in the District Court were those involving the defendants' purported failure to comply with federal regulations governing these tests. See, e.g., Second Am. Compl. ¶¶ 1-9, 1-12, 3-5, ECF No. 28. Elsewhere, Freeman argued that the specific test that led to her termination was not federally mandated. See, e.g., Counterstatement of Material Facts ¶ 1, ECF No. 60. For the sake of completeness, we note that the relevant regulatory definition of "commerce" is quite broad, and it is undeniable that operating a school bus in New Jersey requires a commercial driver's license. See 49 C.F.R. §§ 382.103(a) & (c), 382.107; N.J. Motor Vehicle Comm'n, Commercial Driver License Manual § 10-117 *et seq.*, http://www.state.nj.us/mvc/pdf/Commercial/CDL_Manual_english.pdf. Those courts to have considered the issue have found school bus drivers to be within reach of the relevant regulations. See, e.g., Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist., 103 F. App'x 888, 889 n.1 (6th Cir. 2004) (nonprecedential); English v. Talladega Cnty. Bd. of Educ., 938 F. Supp. 775, 778–79 (N.D. Ala. 1996).

Left remaining are points four and six. With regard to the allegation that drug tests were administered during off-duty hours and "without cause," we note, as a preliminary matter, that "[t]here is no private cause of action available to aggrieved employees for a violation of the procedural protections" of the federal drug-testing regime. Williams, 527 F.3d at 1137; see also Burton v. Southwood Door Co., 305 F. Supp. 2d 629, 634 (S.D. Miss. 2003) (collecting cases to show that "[n]umerous courts have concluded that there is no private right of action to enforce DOT drug testing regulations").[3] Further, the regulations do appear to contemplate testing after the performance of safety-sensitive functions has ceased. See 49 C.F.R. § 382.305(l).

In any event, the District Court properly analyzed the state and federal constitutional dimensions of this claim under the "special needs" test. See Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 633–34 (1989); Neumeyer v. Beard, 421 F.3d 210, 213–14 (3d Cir. 2005). And we agree (for substantially the same reasons articulated by the District Court) that neither the alleged violations of protocol identified nor the testing procedure itself violated the Fourth Amendment. Cf. Krieg v. Seybold, 481 F.3d 512, 518–19 (7th Cir. 2007) (holding that random, suspicion-less testing of a streets and sanitation employee passed constitutional muster under the special needs test); Gonzalez

---

[3] The record suggests that some of Freeman's objections pertaining to the sample-collection method were nonetheless acknowledged and addressed by the relevant defendants.

5

v. Metro. Transp. Auth., 174 F.3d 1016, 1021 (9th Cir. 1999) (remanding claims brought by bus dispatchers and instructors because, on a limited record, "we do not yet know whether dispatchers and instructors would cause physical risk to passengers if impaired"; what "was critical in [a prior case] was that the persons tested could be impaired 'behind the wheel'").

With regard to the alleged error in accepting Kopakowski's testimony, the District Court's use of the information was in line with the relevant standards for resolving summary judgment motions and did not stray from the parties' own understanding of Kopakowski's communications with Freeman. Compare Def.'s Statement of Material Facts ¶¶ 63–80, ECF No. 53-3, with Pl.'s Counterstatement of Material Facts ¶¶ 63–80. The actual effectiveness of the EAP program is beyond the ken of our review, but it is undisputed that the defendants believed that Freeman's participation in the exercise would enable her to return to service.

For the reasons discussed above, we detect no error in the District Court's judgment. Accordingly, we will affirm.[4]

---

[4] Although we deem any unraised claims to be waived, our consideration of the District Court's decision did not reveal any other errors that would lead to a different outcome.